CAROL K. HULL, Plaintiff-Appellant, v. SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a Memorial Hospital of Carbondale, Defendant-Appellee.

Fifth District    No. 5—03—0800

Opinion filed March 10, 2005.

---

Stephen P. McGlynn, of McGlynn & McGlynn, of Belleville, for appellant.

Kara L. Jones and Michael F. Dahlen, both of Feirich/Mager/Green/Ryan, of Carbondale, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, Carol K. Hull, filed a medical malpractice complaint against the defendant, Southern Illinois Hospital Services, doing business as Memorial Hospital of Carbondale. The defendant moved to dismiss the plaintiff's complaint on the basis that the plaintiff's correlating affidavit and medical report did not comply with the substantive requirements of section 2—622 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—622 (West 2002)). The circuit court dismissed the plaintiff's complaint with prejudice. On appeal, the plaintiff argues that the circuit court erred in dismissing her complaint with prejudice because the medical report and affidavit fully complied with section 2—622 and because any deficiencies in the physician's medical report were merely technical in nature.

We reverse and remand.

## FACTS

On April 3, 2003, the plaintiff filed her medical malpractice complaint against the defendant. The plaintiff alleged that when she was admitted to the defendant's hospital for a CAT scan, the defendant's agents improperly administered an intravenous injection, that extravasation (the escape of fluid into the surrounding tissue) occurred, and that a significant amount of fluid passed outside the plaintiff's vein and into the surrounding tissue, causing injury to her arm, which required surgery. The plaintiff attached to her complaint an affidavit, pursuant to section 2—622, in which her attorney stated that he had reviewed the facts of the case with a qualified health professional who concluded that the plaintiff's cause of action was meritorious. On July 2, 2003, the plaintiff filed the written report of George Heymach, Ph.D., M.D., M.B.A. Dr. Heymach's report indicated that he was a licensed physician and that, after reviewing the plaintiff's medical records, he concluded that the defendant failed to acquire the plaintiff's informed consent for the intravenous administration she received, that the defendant completed the study before taking note of the plaintiff's arm, and that as a result of the improper intravenous administration, the plaintiff suffered a long-term extravasational injury, an ulnar nerve injury, and a weakness in her left hand.

On July 24, 2003, the defendant filed a motion to dismiss the plaintiff's complaint. In its motion, the defendant argued that the plaintiff failed to attach the health professional's written report to her complaint and that Dr. Heymach's written report, filed on July 2, 2003, did not comply with section 2—622's requirements. In an order filed on August 18, 2003, the court held that Dr. Heymach's report was "deficient in setting forth his qualifications and establishing a

nexus between the injuries of the plaintiff and any specific act or failure to act by the defendant," and the court granted the plaintiff leave to file a supplemental report.

On September 15, 2003, the plaintiff filed Dr. Heymach's curriculum vitae and amended report, which stated as follows:

"I am readdressing a letter regarding care rendered to [the plaintiff] on April 13, 2000[,] at [the defendant's hospital]. The procedure and IV administration of dye appears to have been performed without a permit or advice to the patient concerning 'what to expect' and the attendant risks to the procedure. Additionally, it would appear that the complete study was completed before anyone took note of her arm.

[The plaintiff] went on to develop symptomatic weakness in her left hand and apparently stopped working soon [sic] time after as a result of this injury. Had the patient been advised of the risks of the procedure[,] she would have understood that the extravasation and pain was NOT to be expected—further[,] it would have allowed her to notify the staff. The staff had a responsibility to check her arm and the site prior to her discharge.

The extravasation of dye is known to cause a severe reaction—and in fact, it required her hospitalization that night. While many cases resolve over time[,] the extravasation of dye can cause a compressive-ischemic neuropathy—precisely what appears to have occurred.

There is demonstrable documentation of ulnar nerve injury.

I would add that there appears to be some delay from 08:38[,] when she had the procedure done[,] until 17:07[,] when she was admitted to Herrin Hospital. Was timely and appropriate ice and elevation administered?

I have attached a [curriculum vitae] to negate any questions concerning my experience and training. I am a boarded pulmonary-[ ]internist who has additionally passed boards in critical care medicine and geriatrics. As a former medical director of a 52[-]bed ICU-[s]tep[-]down unit[,] I managed many critically ill patients and assisted in the care of patients who had had various medication extravasations and sequela.

I am cognizant of the standards of care in managing patients who undergo CT, MRI, and PET scanning as well as other invasive radiological procedures. As I previously noted[,] I have an active medical license in the [S]tate of Missouri. Commencing six years ago I held a position as a [vice president] of [m]edical [a]ffairs in Kansas City and during that time help[ed] teach family medicine residents. Approximately two years ago, I changed positions and am a consultant and continue to be actively engaged in medical affairs on a daily basis but am not presently caring for patients.

In summary, it [is] my opinion that the injury to [the plaintiff's] arm and her subsequent ulnar impairment was [*sic*] causally related to the extravasation of dye in the radiology department at [the defendant's hospital]. That care rendered was below the standard of care."

Dr. Heymach's curriculum vitae, which was attached to the pleading and his report, stated that from 1981 to 1997, as a clinical assistant professor of medicine, Dr. Heymach taught and trained medical residents and students at the University of Pittsburgh. From August 1997 to November 1998, Dr. Heymach was vice president of medical affairs at the Baptist Medical Center in Kansas City, where he served as an educator in the Goppert Family Medicine Residency program. From November 1998 through November 2000, Dr. Heymach served as medical director at Health Midwest in Kansas City and concomitantly taught in the training programs of both Clinical Pastoral Care and Goppert Family Practice Residency.

On September 19, 2003, the defendant filed another motion to dismiss on the basis that Dr. Heymach's report failed to meet the requirements of section 2—622 and that Dr. Heymach failed to meet the qualifications to render that report. On October 27, 2003, the court dismissed the plaintiff's complaint with prejudice. On December 22, 2003, the plaintiff requested leave to file her late notice of appeal, which we granted on January 7, 2004.

## ANALYSIS

To minimize frivolous medical malpractice suits, Illinois law requires the plaintiff to file with her medical malpractice complaint an affidavit and accompanying physician's report (735 ILCS 5/2—622(a)(1) (West 2002)). In the affidavit, the plaintiff's attorney must affirm that a qualified, licensed physician has reviewed the case and determined that there is a reasonable and meritorious cause for the filing of the action. 735 ILCS 5/2—622(a)(1) (West 2002). The plaintiff's attorney must declare in the affidavit that he consulted and reviewed the facts of the case with a health professional who (1) is licensed to practice medicine in all its branches, (2) is knowledgeable in the relevant issues involved in the particular action, (3) practices or has practiced within the last six years or teaches or has taught within the last six years in the same area of health care or medicine that is at issue in the particular action, and (4) is qualified by experience or demonstrated competence in the subject of the case. 735 ILCS 5/2—622(a)(1) (West 2002). The physician's qualifications must be set forth by the doctor in his accompanying medical report. *Cuthbertson v. Axelrod*, 282 Ill. App. 3d 1027, 1037 (1996). The form of the report matters little, but the author of the report must be shown to have the requisite

qualifications to express an opinion. *Moyer v. Southern Illinois Hospital Service Corp.*, 327 Ill. App. 3d 889, 897 (2002).

■ "Section 2—622 is designed to reduce the number of frivolous medical malpractice lawsuits that are filed and to eliminate such actions at an early stage. [Citation.]" *Apa v. Rotman*, 288 Ill. App. 3d 585, 589 (1997). The section's purpose is not to burden the plaintiff with insurmountable hurdles prior to filing but to ensure that the plaintiff has a meritorious medical malpractice claim. *Apa*, 288 Ill. App. 3d at 589. Illinois courts liberally construe a physician's certificate of merit in favor of the malpractice plaintiff and recognize that the statute is a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not a likelihood of success. *Moyer*, 327 Ill. App. 3d at 904; see also *Apa*, 288 Ill. App. 3d at 589 (section 2—622 must be liberally construed so that cases may be quickly and finally decided according to the parties' substantive rights).

■ When the plaintiff fails to satisfy the requirements of section 2—622(a)(1) of the Code (735 ILCS 5/2—622(a)(1) (West 2002)), a dismissal is mandatory (735 ILCS 5/2—622(g) (West 2002)). However, the determination concerning whether the complaint should be dismissed with or without prejudice is in the sound discretion of the circuit court (*Moyer*, 327 Ill. App. 3d at 894; *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000)), and we will not disturb the circuit court's decision unless it clearly abused its discretion (*Moyer*, 327 Ill. App. 3d at 894). Where a court considers the particular facts and unique circumstances of the case before determining that the complaint should be dismissed with prejudice, the court did not abuse its discretion and the trial court's determination will not be reversed on appeal. *Apa*, 288 Ill. App. 3d at 590.

■ In the present case, Dr. Heymach stated in his report that he was a board-certified pulmonary internist who additionally passed boards in critical care medicine and geriatrics and that his medical license was active in the State of Missouri. In his report, Dr. Heymach stated that he was cognizant of the standards of care in managing patients of radiological procedures and that he had assisted in the care of patients who had various medication extravasations and sequela. In his report, Dr. Heymach reviewed the relevant issues involving the plaintiff's action. Hence, Dr. Heymach's report indicated that he was licensed to practice medicine in all its branches and that he was knowledgeable of the relevant issues involved in this particular action. See 735 ILCS 5/2—622(a)(1)(i) (West 2002).

The defendant argues that because the defendant's alleged negligence occurred when the plaintiff was admitted as an outpatient for a CAT scan, the relevant area of medicine in the present case is

radiology. The defendant argues that Dr. Heymach was not qualified to certify that the plaintiff's action was meritorious, because his medical report and curriculum vitae failed to establish that he has practiced or taught in the area of radiology within six years of the report.

The physician must establish in his report that he has practiced or taught within the previous six years in the same area of health care that is at issue in the case. 735 ILCS 5/2—622(a)(1)(ii) (West 2002). Despite the defendant's contention, however, the plaintiff's CAT scan was not the subject matter of the plaintiff's complaint and was not the area of health care at issue. The subject matter of the plaintiff's complaint involved the defendant's improper administration of an intravenous injection of dye, which, as it happened, occurred prior to a radiological procedure. Dr. Heymach's curriculum vitae sufficiently established that he practiced or taught within the previous six years in the area of health care involving intravenous injections. See 735 ILCS 5/2—622(a)(1)(ii) (West 2002); *Apa*, 288 Ill. App. 3d at 589 (section 2—622 must be liberally construed so that cases may be quickly and finally decided according to the parties' substantive rights).

The defendant also argues that because neither Dr. Heymach's report nor his curriculum vitae indicated that he has performed a radiological procedure such as that involved in this case, he failed to establish that he was qualified by experience or demonstrated competence in the subject of the case. See 735 ILCS 5/2—622(a)(1)(iii) (West 2002).

Again, we reject the defendant's contention that Dr. Heymach was required to show experience or demonstrated competence in the area of radiology. Within Dr. Heymach's report, he stated, "I am cognizant of the standards of care in managing patients who undergo CT, MRI, and PET scanning as well as other invasive radiological procedures." He also stated that as a former medical director, he had "assisted in the care of patients who had had various medication extravasations," the subject of the plaintiff's case. Hence, Dr. Heymach established that he was qualified by experience or demonstrated competence in the subject of the case. See 735 ILCS 5/2—622(a)(1)(iii) (West 2002); *Apa*, 288 Ill. App. 3d at 589 (section 2—622 must be liberally construed so that cases may be quickly and finally decided according the parties' substantive rights). After reviewing Dr. Heymach's report and curriculum vitae, we find that they demonstrated that he met the qualifications required by section 2—622(a)(1) to complete the written report required by that section and to render an opinion regarding the plaintiff's action.

■ The defendant next argues that Dr. Heymach's medical report failed to adequately set forth the reasons for his conclusion that the

plaintiff's cause of action against the hospital was meritorious. Specifically, the defendant argues that the medical report contained only vague and conclusory statements regarding the basis for the doctor's opinion and the relevant standard of care.

Section 2—622(a)(1) requires as follows: "A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit." 735 ILCS 5/2—622(a)(1) (West 2002); see also *Moyer*, 327 Ill. App. 3d at 897 (the report must demonstrate a reasonable and meritorious claim); *Peterson v. Hinsdale Hospital*, 233 Ill. App. 3d 327, 331 (1992) (the report must clearly identify reasons for the health professional's determination that there is a meritorious cause of action). In *Premo v. Falcone*, 197 Ill. App. 3d 625, 632 (1990), the physician's report stated that the reasons for his determination that a meritorious cause existed were the defendants' " 'inappropriate interpretation of clinical evidence of fetal stress and distress during labor' " and the defendants' " '[i]nappropriate actions *** to intervene and to provide appropriate medical care and treatment.' " The court in *Premo* held that because the report never discussed what the appropriate actions were, it failed to adequately state a basis for the physician's determination that there was a reasonable and meritorious cause to file an action against the defendants. *Premo*, 197 Ill. App. 3d at 632-33.

Here, however, Dr. Heymach's report discussed the appropriate standard of care, *i.e.*, that the defendant should have given the plaintiff advice and information to receive her full informed consent and should have appropriately monitored her arm prior to her discharge. Dr. Heymach stated in his report that the defendant deviated from the standard of care because it failed to notify the plaintiff of the expectations and attendant risks of the intravenous procedure, so that she could notify the staff of unexpected pain, and that the defendant failed to properly monitor the plaintiff's arm prior to her discharge. As a result of the defendant's negligence, the plaintiff did not notify the staff of the extravasation and pain that was not to have been expected, and the dye continued to escape into the surrounding tissue, causing the plaintiff to suffer a severe reaction, compressive-ischemic neuropathy, and ulnar nerve injury. Hence, Dr. Heymach's report clearly identified the reasons for his determination that the plaintiff's cause of action against the defendant was meritorious. See *Moyer*, 327 Ill. App. 3d at 902-03; *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 373 (1988) (a health professional is not required to include the phrase "reasonable and meritorious cause for filing the action" within the

written report, although there must be sufficient facts and conclusions set forth in the report to support that finding).

We conclude that the circuit court abused its discretion in determining that the plaintiff failed to satisfy the requirements of section 2—622(a)(1) of the Code. Accordingly, we reverse the circuit court's order dismissing the plaintiff's amended complaint with prejudice and remand this case to the circuit court for further proceedings consistent with this disposition.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Jackson County is reversed, and the cause is remanded.

Reversed; cause remanded.

WELCH and KUEHN, JJ., concur.