NO. 4-06-0952        Filed 10/11/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DAN CRULL, Special Administrator of  )  Appeal from
the Estate of NOVALENE CRULL,         )  Circuit Court of
Deceased,                             )  Livingston County
          Plaintiff-Appellant,        )  No. 04L36
          v.                          )
PRAMERN SRIRATANA, M.D.; MID-ILLINOIS )
HEMATOLOGY & ONCOLOGY ASSOCIATES,     )
LTD., an Illinois Corporation; KENNETH )
N. JORDAN, D.O.; and MADISON STREET   )
CLINIC, P.C., an Illinois Professional )  Honorable
CORPORATION,                          )  Harold J. Frobish,
          Defendants-Appellees.       )  Judge Presiding.
_____

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In December 2004, plaintiff, Dan Crull, as special

administrator of the estate of Novalene Crull, filed a medical-

malpractice complaint against defendants, Pramern Sriratana,

M.D.; Mid-Illinois Hematology & Oncology Associates, Ltd.;

Kenneth N. Jordan, D.O.; and Madison Street Clinic, P.C.

          In October 2006, the trial court dismissed plaintiff's

complaint with prejudice, upon learning that the reviewing

health-care professional's report, which was required by section

2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West

2004)), had been written by a person not licensed to practice

medicine.

          Plaintiff appeals, arguing that the trial court erred

by (1) ordering him to reveal the identity of the author of the

section 2-622 report and (2) dismissing the case with prejudice.

We disagree and affirm.

## I. BACKGROUND

When plaintiff filed his December 2004 medical-malprac-
tice complaint, he failed to attach a report of a reviewing
health-care professional and, instead, invoked the automatic
statutory 90-day extension under section 2-622(a)(2) of the Code
(735 ILCS 5/2-622(a)(2) (West 2004)).  However, plaintiff did not
file a report of any reviewing health-care professional before
the automatic 90-day stay expired on March 17, 2005.  The statute
of limitations expired on December 19, 2004.

In early March 2005, Sriratana, a specialist in hema-
tology and oncology, and his corporation prematurely filed a
motion to dismiss plaintiff's complaint based on plaintiff's
failure to file a section 2-622 report from a qualified reviewing
health-care professional.  On March 21, 2005, Jordan, a special-
ist in orthopedics and muscular osteopathic medicine, and his
corporation filed a motion to dismiss, alleging that plaintiff
failed to comply with section 2-622, in that he failed to submit
an attorney affidavit, health-care professional's report, or a
motion for an extension of time to file the report within the 90-
day period.

The next day, the trial court held a hearing on defen-
dants' motions to dismiss.  At the start of the hearing, plain-
tiff's counsel, Guy Geleerd, moved for leave to file three
identical section 2-622 affidavits and health-care professional's
reports instanter and tendered the affidavits and reports he

- 2 -

sought to submit. Each of Geleerd's affidavits stated that he had consulted and reviewed the facts of this case with a health-care professional whom he believed (1) to be knowledgeable in the relevant issues involved in this cause of action, (2) had practiced within the last six years in the same area of health care or medicine at issue in this cause of action, and (3) was qualified by experience and demonstrated competence in the subject of this case. Each affidavit also stated that a copy of the health-care professional's report was attached, clearly identifying the reasons for the professional's determination that a reasonable and meritorious cause for filing of this cause of action existed.

The health-care professional's reports, dated March 18, 2005, stated that the author was a "physician licensed to practice medicine in all of its branches, residency trained and board certified in [the] specialty of internal medicine/nephrology." The report was not signed and did not reveal the reviewing health-care professional's name and address, as required by section 2-622(a)(1) of the Code (735 ILCS 5/2-622(a)(1) (West 2004)).

The trial court recognized that the health-care reports were not signed. When the court asked Geleerd why the health-care reports did not reveal the author's identity, Geleerd responded that "Illinois law does not require that we tender signed [section] 2-622 reports along with our [section] 2-622 affidavit." Sriratana's counsel objected, and the following colloquy between the court and Geleerd occurred:

- 3 -

"THE COURT:  Well, aside from what the law requires, give me the name of your expert.

MR. GELEERD:  I don't want to do that.

THE COURT:  Well, you may regret that. I want to know from you, as an officer of this court, that you have got somebody.  I want to know who he is, and I want to know why his name is not on here.

MR. GELEERD:  I have two experts.  One is a board[-]certified internal medicine and nephrologist [expert]; and one is a board[-]certified internal medicine and infectious disease expert.  And until the Cargill [v. Czelatdko, 353 Ill. App. 3d 654, 818 N.E.2d 898 (2004),] decision is reviewed by either an [a]ppellate [c]ourt or the [s]upreme [c]ourt, it is our understanding that the Best v. Taylor [Machine Works, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997),] decision overrides the previously stricken [section] 2-622 that requires the plaintiff to identify his or her expert.

THE COURT:  You are conceding that Cargill requires identification?

MR. GELEERD:  Oh, yes.  No question

- 4 -

about that.

THE COURT: Do you have any authority other than <u>Cargill</u> that speaks to the issue that would excuse you from identifying the expert?

MR. GELEERD: There is a Rule 23 order [(166 Ill 2d. R. 23)] that was issued by the First District Appellate Court that we have been trying to get a copy of, that we have been unable to get a copy of. But there is a Rule 23 order by the First District Appellate Court that did not follow <u>Cargill</u>. And now we are kind of waiting.

THE COURT: <u>Cargill</u> is out of what District?

MR. GELEERD: <u>Cargill</u> is out of I believe it is the Fifth District, Your Honor.

MR. GUNN: I believe it is the Fourth, Your Honor.

THE COURT: Fourth District, that might be correct.

***

THE COURT: I am going to give you an opportunity, Mr. Geleerd, for you to state who it is that your experts are today. Give me their names and their physical locations.

- 5 -

MR. GELEERD:  Can I do that in camera?

THE COURT:  No.

MR. GELEERD:  Can I do that outside the presence of the defense counsel?

THE COURT:  No.

MR. GELEERD:  I feel I am in a very ***

THE COURT:  I am not going to order you to.  I am going to give you the opportunity to provide some assurance to the court by identification of these people that you actually have them.

MR. GELEERD:  Oh, I will be more than happy to state on the record.

THE COURT:  I am not interested in that. There is a test here.  I will know if you have got them if you give me their names and addresses.  And then they are deposed at a particular point in time, and they will say yes, I was on board with Mr. Geleerd on March 22, 2005; or, yes, this man had talked to me, but I didn't really know what was going on. No, you know, whatever.  I want to be assured.  I want the [a]ppellate [c]ourt to be assured that you have someone on board right now that has seen this opinion letter to you and has said, Mr. Geleerd, I will sign that.

- 6 -

Let me ask this question. Have these experts signed these opinion letters already?

MR. GELEERD: One has not. The board[-]certified internist with the specialty in infectious disease has not. And the board[-]certified internal medicine [physician] with the specialty in nephrology has reviewed the records. And he is the one who gave me a draft of the letter that I attached to the [section] 2-622. The actual [section] 2-622 is what I sent down to him on March 18, which I have not received a copy of them.

THE COURT: As you sit there now, there is not in your possession a signed opinion letter by anyone. Would that be true or not true?

MR. GELEERD: No, that is not true. I do have a signed opinion letter of a consultant who is an internal[-]medicine physician. However, I am happy to disclose to this [c]ourt the names of the two experts that I would put on the stand in front of the jury. I just would ask not to do that in front of defense counsel, unless this [c]ourt is ordering me to do so, then, I would be happy to do so. But both of the individuals who I

will disclose at this point in time will come on board as experts for the plaintiff to testify in this case.

THE COURT: Well, you represent the plaintiff. I am going to let you decide what it is that you have to do. I am not going to order you to. If you are going to be sued for malpractice, this will be a call that you made that subjected yourself to liability. I am not saying how I am going to rule. But I want the record clear that you have an opportunity today to give the identification of these two experts. You are either going to do that, or you are not going to do that. And that is your call. And you live with your decision."

Geleerd then asked for an opportunity to consult with the beneficiaries of the estate "so they are made aware of the [c]ourt's request that I go against what the plaintiff's bar is considering a wrong decision, that being Cargill." Geleerd wanted to let them know what was going on "since there is a split in the law between the plaintiff's bar and the defense bar." Geleerd indicated he was proceeding under Best, the pre-Cargill case. The court then stated no split in the law existed, to which Geleerd responded that he was of the opinion there was a split between the First District and the Fourth District Appellate

Courts. The court then asked Geleerd if he was aware that they were in the Fourth District, and Geleerd responded that he was.

Later, at the same hearing, the trial court and Geleerd had the following discussion:

"THE COURT: What is your reason that you don't want to disclose them as you sit there today? Are you afraid you are going to besmirch their reputation? What's your concern?

MR. GELEERD: No, not at all. I feel that as a member of the plaintiff's bar, and recognizing--

THE COURT: Well, forget the club. But you have clients. Why don't you just want to say, these are the names of doctors, this is what they say. I don't understand your reasoning. Be clear because we have got a record here.

MR. GELEERD: My only reason, as you said, being a member of the club. I don't want to put my club, as you say, the Illinois Trial Lawyers Association, into a position where I have conceded to Cargill where I know that there is a Rule 23 order from the First District Appellate Court that is trying to get its way up to the [s]upreme [c]ourt so

- 9 -

the [s]upreme [c]ourt can look at <u>Cargill</u>.

THE COURT:  So it is the club, and not your clients.  You asked for a recess to talk to the clients to get permission.  And they are not going to understand one iota.

MR. GELEERD:  You are absolutely right.  But that is the legal[-]malpractice issue.  But I have absolutely no objection, if the [c]ourt begs my indulgence, I can get these people."

Sriratana's counsel then objected because the 90-day statutory deadline had passed and plaintiff had still not offered a signed section 2-622 report.  Counsel for the other defendants also objected.  The court reserved ruling and gave plaintiff time to file a motion for leave to extend the statutory deadline, but urged Geleerd to furnish the signed opinion letters as soon as possible.

At the end of the hearing, Geleerd indicated that on January 1, 2005, his law partner died unexpectedly of a heart attack.  As a result, Geleerd had to review over 300 files and overlooked the deadline to file the section 2-622 affidavit and report.

In April 2005, Geleerd sent a letter disclosing the name of a physician who Geleerd purported was the reviewing health-care professional.  In this letter, Geleerd stated that "in accord with the [c]ourt's order, and after having engaged

plaintiff's expert in accord with the [c]ourt's order," he received the expert's draft letter via e-mail and indicated he would be forwarding the same to defendants' counsel. Later in April 2005, plaintiff filed a motion for an extension of time in which to file the section 2-622 report. Attached thereto was the report of a reviewing health-care professional identifying Bruce R. Leslie, M.D., as the author. This report was different in both format and content from the reports presented at the March 2005 hearing. In his report, Leslie stated that he was board certified in internal medicine but did not mention a specialty in either nephrology or infectious disease. Geleerd revealed for the first time in May 2005 that Leslie was not the author of the unsigned reports tendered at the March 2005 hearing.

In July 2005, the parties were before the trial court for a hearing on defendants' motion to dismiss and plaintiff's motion for an extension of time to file the section 2-622 report. The court denied defendants' motion to dismiss and, over defendants' objections, granted plaintiff's motion for extension and allowed the late filing of the section 2-622 report. Sriratana's counsel pointed out the identity of the original author of the section 2-622 reports tendered at the March 2005 hearing had not been disclosed and asked that they be disclosed. Because the issue had not been briefed to the point the court felt that it could make an informed decision, the court stated that counsel could raise the issue later in a new motion and described it as a "separate[,] very meaty issue."

In October 2005, Sriratana filed a motion to compel plaintiff to reveal the identity of plaintiff's reviewing health-care professionals. At a January 2006 hearing, the trial court described the issue as whether "plaintiff should be compelled to identify the individuals that have been described as consultants." Geleerd stated that he had already disclosed one of his two experts and would be disclosing the other expert, who was an infectious-disease expert. He then clarified that the only identity he was "seeking to prohibit from disclosure [was] one consultant who signed the [section] 2-622 that [Geleerd] tendered in open court [in March 2005]." Geleerd also stated that the second expert whose report he would be submitting was Dr. Frank Rhame.

Geleerd acknowledged that he relied on the undisclosed author of the March 2005 report as being within the confines of section 2-622 but stated this was "[u]nder the auspices that he [was] a nondisclosed expert" under discovery rules. The trial court asked Geleerd if he wanted "to hide whoever this person was and prevent [defendants] from really ascertaining whether [he] had [his] ducks in a row, whether [he] had the solid basis for a malpractice action." Geleerd denied that he was doing that and reiterated he was litigating the case under the pre-Cargill state of law, which, according to Geleerd, did not require the identity of a section 2-622 health-care professional.

Defendants argued that plaintiff forfeited the right not to reveal the consultant's identity since plaintiff used the

consultant to defeat defendants' motion to dismiss. The trial court and Geleerd engaged in a dialogue as to why Geleerd should not be required to reveal the identity of the consultant who authored the section 2-622 reports tendered in March 2005. Geleerd responded, "Why can't they take my word and yours?" and suggested he could identify the consultant to the court and defendants could then take the court's word that a medical doctor had signed the report. Geleerd stated that no law supported the theory that a plaintiff forfeits the right not to disclose the consultant's identity by using the consultant to defeat a motion to dismiss. Geleerd also stated that this argument failed because the court entered an order extending the time within which plaintiff could file the section 2-622 report, and Geleerd filed the report signed by Leslie.

Defendants' counsel then argued that in 1998 the legislature passed section 2-622 of the Code, which gave defendants the right to know who was certifying the case against them. Thus, Geleerd's argument that disclosure was not required prior to the decision in Cargill lacked merit.

Following more argument, the trial court granted defendants' motion to compel disclosure of the identity of the author of the unsigned reports tendered in March 2005. The court gave Geleerd a short time to reveal the identity of the consultant but indicated if he refused to do so, the court would dismiss the case. The trial court then stated as follows:

"I am simply requiring--finding that you have

- 13 -

chosen to use, for good reason, you have chosen this individual to keep your case alive. And you have kept your case alive by using him. And fair play and the right to enforce the law as contemplated by the [l]egislature entitles the defense to know who he is."

In February 2006, plaintiff filed a motion to reconsider the trial court's January 2006 ruling requiring disclosure of the consultant. At an April 2006 hearing on that motion, the court asked Geleerd if Leslie had been contacted and was "on board" as of the March 22, 2005, hearing. Geleerd responded that he had contacted both Leslie and Rhame in November 2004. However, he acknowledged that as of March 22, 2005, (1) he had not yet sent Leslie or Rhame all of the medical records in the case, (2) neither Leslie nor Rhame had sufficient records upon which they could make an opinion as to whether the case presented a meritorious cause of action, and (3) the only person who could make such an opinion was his unnamed consultant. The court denied plaintiff's motion to reconsider. Later in April 2006, Geleerd revealed to defendants that plaintiff's consultant was Dr. Bernard R. Lerner.

During a May 2006 conference call with counsel, the trial court was advised that a question had arisen as to whether Lerner was licensed to practice medicine at the time his opinion was given. Geleerd was to get an affidavit and documentation

regarding that issue.  The record does not show that Geleerd ever produced such an affidavit.

In May 2006, Lerner submitted a letter stating that the last medical license he held was in New Mexico.  He later moved to Chicago to pursue a career in medical consulting, and because he was no longer practicing medicine, he did not pay his fees or dues.  After moving to Chicago, he learned that his license to practice medicine had been suspended.

Defendants provided the trial court with evidence showing the following.  Lerner's Illinois license to practice medicine was revoked in July 1990 after he was convicted of felony narcotics-related charges.  Lerner's New Mexico medical license expired in June 1999, and he was not licensed in any other state when he authored the March 2005 section 2-622 report.  In January 2003, this court recognized that Lerner misrepresented his licensures and qualifications when authoring a section 2-622 report.  See Long v. Mathew, 336 Ill. App. 3d 595, 599, 783 N.E.2d 1076, 1079 (2003).  Long was published in the official advance sheet on April 2, 2003 (Official Reports Advance Sheet No. 7 (April 2, 2003)), well before Geleerd filed the complaint in December 2004 and the section 2-622 affidavit and health-care professional's report in March 2005.  Lerner was not board certified in internal medicine, as the March 2005 section 2-622 report stated, but rather practiced as a neurosurgeon (when he was licensed).

In October 2006, the trial court ordered that Lerner's

section 2-622 report be stricken because he was not a licensed physician. The court also ordered that Geleerd's March 2005 affidavit be stricken because it was based on Lerner's report. The court stated, "It is absolutely clear in this case that the requirements of [section 2-622] have not been met. Absolutely clear." The court further stated that, "[i]n a very real sense, a fraud has been committed upon" defendants, the court system, and the people of Illinois. The court explained as follows:

> "The plaintiff relying on Lerner was never
> entitled to have a cause of action pursued.
> The plaintiff's case was dead in the water.
> Mr. Lerner was not a [licensed] physician.
> And the record must be made very clear here.
> No one, no one else was on board with the
> required opinion on March 17, [2005,] when
> the 90-day period expired."

The court also made it clear that while it had found good cause for the late filing of the section 2-622 report, "it was good cause for the late filing of a health-care report by a doctor who was on board by March 17, [2005]." The court then dismissed the case with prejudice.

This appeal followed.

II. MOTIONS TO STRIKE PLAINTIFF'S REPLY BRIEF

In April 2007, Sriratana and Jordan each filed a motion to strike plaintiff's reply brief, alleging that it failed to satisfy the requirements of Illinois Supreme Court Rule 341 (210

Ill. 2d R. 341) because plaintiff (1) did not cite to the official record when making statements of fact, (2) referenced matters not within the record on appeal, and (3) failed to cite legal authority for legal arguments.  We agree and strike plaintiff's reply brief.

The rules of procedure concerning appellate briefs are not mere suggestions, and it is within this court's discretion to strike the plaintiff's brief for failing to comply with Supreme Court Rule 341.  Niewold v. Fry, 306 Ill. App. 3d 735, 737, 714 N.E.2d 1082, 1084 (1999).  Rule 341(j), which authorizes an appellant to file a reply brief, provides as follows:  "The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of appellee and need contain only [a]rgument."  210 Ill. 2d R. 341(j).  Rule 341(h)(7) requires appellants to give reasons for their contentions "with citation of the authorities and the pages of the record relied on."  210 Ill. 2d R. 341(h)(7).  This court has stated that "[s]trict adherence to the requirement of citing relevant pages of the record is necessary to expedite and facilitate the administration of justice."  Maun v. Department of Professional Regulation, 299 Ill. App. 3d 388, 399, 701 N.E.2d 791, 799 (1998).  A contention that is supported by some argument but no authority does not meet the requirements of Rule 341 and is considered forfeited.  Sakellariadis v. Spanos, 163 Ill. App. 3d 1084, 1089, 517 N.E.2d 324, 328 (1987).

Plaintiff's reply brief is 14 pages long, contains

- 17 -

assertions that are either not in the record or are contrary to the record, and contains no citations to the record. In addition, instead of being strictly confined to replying to arguments raised in the appellee brief, plaintiff devotes much of his reply brief to (1) justifying Geleerd's failure to timely obtain a health-care professional who met the requirements of section 2-622 and (2) explaining why Geleerd did not know Lerner did not have the necessary qualifications to meet section 2-622 requirements.

III. ANALYSIS

A. Plaintiff's Claim That the Trial Court Erred By
Ordering Him To Reveal Lerner's Identity

Plaintiff first argues that the trial court erred by ordering him to reveal Lerner's identity. Specifically, he contends that the court abused its discretion by applying Cargill. We disagree.

1. Cargill: What Does Section 2-622 Require?

The legislature enacted section 2-622(a)(1), which requires a medical-malpractice plaintiff to file an affidavit and accompanying health-care professional's report with the complaint (735 ILCS 5/2-622(a)(1) (West 2004)), to minimize frivolous medical-malpractice suits. Hull v. Southern Illinois Hospital Services, 356 Ill. App. 3d 300, 304, 826 N.E.2d 930, 933 (2005). The health professional's report is supposed to demonstrate that plaintiff has a meritorious claim and reasonable grounds exist for pursuing the action. Sullivan v. Edward Hospital, 209 Ill. 2d 100, 117, 806 N.E.2d 645, 656 (2004).

In Cargill, the plaintiffs voluntarily dismissed their medical-malpractice complaint because they could not obtain the physician's report required by section 2-622(a)(1). The plaintiffs then refiled their complaint and asked for a 90-day extension (735 ILCS 5/2-622(a)(2) (West 2004)) to obtain the physician's report. The defendants argued that section 2-622 does not allow for a 90-day extension for plaintiffs to file a physician's report when plaintiffs have previously voluntarily dismissed an action based on the same acts. Cargill, 353 Ill. App. 3d at 656, 818 N.E.2d at 901. This court held that under section 2-622(a)(2), if a physician's report is not attached to the complaint, the plaintiff must attach an affidavit indicating that she has not previously dismissed an action based on the same or substantially the same acts. Cargill, 353 Ill. App. 3d at 661, 818 N.E.2d at 905. In so doing, we discussed the history of section 2-622 as follows:

     "Prior to 1995, section 2-622(a) pro-
  vided, in part, as follows:

        'In any action *** in which
     the plaintiff seeks damages for
     injuries or death by reason of
     medical, hospital, or other healing
     art malpractice, the plaintiff's
     attorney *** shall file an affida-
     vit, attached to the original and
     all copies of the complaint, de-

- 19 -

claring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional who *** has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action ***. *** A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit, but

information which would identify the reviewing health professional may be deleted from the copy so attached.

2. That the affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations.'  735 ILCS 5/2-622(a)(1), (a)(2) (West 1994).

Prior to 1995, section 2-622 did not include a restriction on a plaintiff's right to voluntarily dismiss an action and refile the suit if the plaintiff was unable to obtain the required consultation at the time of filing.  Further, the name and address of the reviewing health professional was not required in the written report.

- 21 -

With the Civil Justice Reform Amendments of 1995, the General Assembly amended section 2-622 through the enactment of Public Act 89-7 (Act) (Pub. Act 89-7, §15, eff. March 9, 1995 (1995 Ill. Laws 284, 291) (amending 735 ILCS 5/2-622 (West 1994))). Following the 1995 amendment, section 2-622 provided, in pertinent part, as follows:

'1. That the affiant has consulted and reviewed the facts of the case with a health professional who *** has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action ***. *** A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit. The report shall include

the name and the address of the
health professional.

    2. That the plaintiff has not
previously voluntarily dismissed an
action based upon the same or sub-
stantially the same acts, omis-
sions, or occurrences and that the
affiant was unable to obtain a
consultation required by paragraph
1 because a statute of limitations
would impair the action and the
consultation required could not be
obtained before the expiration of
the statute of limitations.'  (Em-
phasis added.) 735 ILCS 5/2-
622(a)(1), (a)(2) (West 1996).

In 1997, the Illinois Supreme Court
issued its opinion in Best v. Taylor Machine
Works, 179 Ill. 2d 367, 689 N.E.2d 1057
(1997).  In that case, the court found cer-
tain 'core provisions' of Public Act 89-7
were unconstitutional and 'inseparable' from
the remainder of the Act.  Best, 179 Ill. 2d
at 467, 689 N.E.2d at 1104.  Thus, the whole
Act was declared void in its entirety.  Best,
179 Ill. 2d at 467, 689 N.E.2d at 1104.  The

- 23 -

court emphasized that 'all of the remaining provisions of Public Act 89-7, which were not challenged in the instant cases, are deemed invalid in this case solely on grounds of severability.  As such, the General Assembly is free to reenact whatever provisions it deems desirable or appropriate.' <u>Best</u>, 179 Ill. 2d at 471, 689 N.E.2d at 1106.

In February 1998, the General Assembly passed Public Act 90-579 (Pub. Act 90-579, §5, eff. May 1, 1998 (1998 Ill. Laws 48, 48) (amending 735 ILCS 5/2-622 (West 1996))).  In May 1998, Governor Ryan signed Public Act 90-579 into law.  Along with adding a subsection setting forth the effective date of the amendment, Public Act 90-579 added the empha-sized language:

> 'If the affidavit is filed as to a defendant who is a physician li-censed to treat human ailments without the use of drugs or medi-cines[,] *** a psychologist, <u>or a naprapath</u>, the written report must be from a health professional li-censed in the same profession, with the same class of license, as the

defendant.' (Emphasis added.) Pub. Act 90-579, §5, eff. May 1, 1998 (1998 Ill. Laws at 49).

Public Act 90-579 also contained the same language requiring the name and address of the health professional and the affidavit requirement that a plaintiff had not previously voluntarily dismissed an action based on the same or substantially the same acts. That language remains in the statute. See 735 ILCS 5/2-622 (West 2002)." *Cargill*, 353 Ill. App. 3d at 656-58, 818 N.E.2d at 901-03.

The *Cargill* court concluded that Public Act 90-579 resurrected the amendments to section 2-622 as inserted by Public Act 89-7, which the *Best* court found unconstitutional. *Cargill*, 353 Ill. App. 3d at 661, 818 N.E.2d at 905.

### 2. Application of the Rule in This Case

Accordingly, under *Cargill*, section 2-622 of the Code clearly requires that medical-malpractice plaintiffs disclose the name and address of the physician who prepared the plaintiff's health-care professional's report. We thus conclude that the trial court did not abuse its discretion by ordering that plaintiff reveal Lerner's identity.

Although Geleerd conceded below that *Cargill* would require disclosure of the health-care professional's name, he argued that *Cargill* did not necessarily apply because a subse-

- 25 -

quent case decided in the First District Appellate Court called the Cargill holding into question.

We reject this argument. As all attorneys and circuit courts in the state are well aware, "A decision of the appellate court, though not binding on other appellate districts, is binding on the circuit courts throughout the State." State Farm Fire & Casualty Co. v. Yapejian, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992). "[A] circuit court must follow the precedent of the appellate court of its district, if such precedent exists; if no such precedent exists, the circuit court must follow the precedent of other districts." Schramer v. Tiger Athletic Ass'n of Aurora, 351 Ill. App. 3d 1016, 1020, 815 N.E.2d 994, 996 (2004). In this case, until either the Fourth District or supreme court holds otherwise, circuit courts are required to follow Cargill. See People v. Caban, 318 Ill. App. 3d 1082, 1086, 743 N.E.2d 600, 604 (2001). Since the trial court in this case sat in the Fourth District, it was required to follow Cargill and any argument by Geleerd to the contrary was without merit.

Moreover, we are not aware of any case published before the trial court dismissed this case that did not follow Cargill. Instead, on July 21, 2005, over a year before the trial court dismissed this case, the First District cited Cargill and stated "the provisions of section 2-622 limiting the statute of limitations exception to plaintiffs who have not already voluntarily dismissed the same or substantially the same claim, as well as

the portion requiring that the consulting physician's name and address be indicated on the report, apply with full force here." Beauchamp v. Zimmerman, 359 Ill. App. 3d 143, 149 n.1, 833 N.E.2d 877, 883 n.1 (2005). Accordingly, the First District and Fourth District were consistent as to a plaintiff's obligation to reveal the identity of reviewing health-care professionals under section 2-622.

In so concluding, we recognize that a panel of this court recently concluded that Cargill wrongly assessed the effect of Public Act 90-579. See O'Casek v. Children's Home & Aid Society of Illinois, 374 Ill. App. 3d 507, 511-12, __ N.E.2d __, ___ (2007). The O'Casek court concluded that amendments to section 2-622 through Public Act 94-677 (Public Act 94-677, §330, eff. August 25, 2005 (2005 Illinois Laws 4964, 4995)) made it clear that Public Act 90-579 did not reenact the civil-reform language regarding voluntary dismissals. O'Casek, 374 Ill. App. 3d at 508-09, __ N.E.2d at __. This case is distinguishable from O'Casek in that it does not involve the language in section 2-622(a)(2) concerning voluntary dismissals. The version of section 2-622(a)(2) in effect when Cargill was decided did not allow a 90-day extension to file the reviewing health-care professional's report if plaintiff had voluntarily dismissed the case and then refiled it (735 ILCS 5/2-622(a)(2) (West 2002), while the version of section 2-622(a)(2) in effect when O'Casek was decided contains no language concerning voluntary dismissals (735 ILCS 5/2-622(a)(2) (West 2006)) (effective August 25, 2005).

- 27 -

However, the issue in this case is whether section 2-622(a)(1) required plaintiff to identify the reviewing heath-care professional who authored the section 2-622 health-care professional's report used to defeat defendants' initial motion to dismiss in March 2005.

Although the present case and O'Casek deal with different aspects of section 2-622, we need to clarify this court's position regarding our earlier decision in Cargill, upon which we rely here, and which the O'Casek court concluded was incorrectly decided.  We disagree with that conclusion and adhere both to Cargill's result and analysis.  To the extent that O'Casek is inconsistent with Cargill or this case, O'Casek is hereby overruled.

### B. Plaintiff's Claim That the Trial Court Erred By Dismissing the Case With Prejudice

Plaintiff also argues that the trial court abused its discretion by dismissing the case with prejudice.  We disagree.

Under section 2-622(a)(1) of the Code, the plaintiff must attach a report from a qualified health-care professional stating that he has reviewed the medical records and has determined in a written report that a reasonable and meritorious cause exists for filing a cause of action.  735 ILCS 5/2-622(a)(1) (West 2004).  This court has noted that a health-care professional must (1) be knowledgeable as to the relevant issues, (2) be licensed to practice medicine, and (3) practice or teach in the same medical specialty as the defendants.  Ingold v. Irwin, 302 Ill. App. 3d 378, 384, 705 N.E.2d 135, 140 (1998).  A plain-

tiff's failure to file a report shall be grounds for dismissal. 735 ILCS 5/2-622(g) (West 2004). However, a plaintiff's noncompliance with section 2-622 does not require the trial court to dismiss the action with prejudice. Cothren v. Thompson, 356 Ill. App. 3d 279, 282, 826 N.E.2d 534, 538 (2005), overruled on other grounds by Vision Point of Sale, Inc. v. Haas, No. 103140, slip op. at 15 (September 20, 2007), ____ Ill. 2d ___, ___, ___ N.E.2d ___, ___ (2007).

Whether to dismiss an action with or without prejudice is a matter within the trial court's discretion. On review, we consider whether the court took the particular facts and unique circumstances of the case into account before determining that the case should be dismissed with prejudice. When the court has done so, we will not reverse the court's determination. Ingold, 302 Ill. App. 3d at 383-84, 705 N.E.2d at 139-40.

In this case, the record clearly shows that Lerner was not licensed to practice medicine when he authored the March 2005 report. Accordingly, although Lerner may have been knowledgeable on the relevant subject matter, he was not qualified to author a section 2-622 report, and the defect could not have been cured by amending the report. See Ingold, 302 Ill. App. 3d at 386, 705 N.E.2d at 141 (concluding that the plaintiff's physician's lack of a medical license was a defect that could not be cured by amending the original section 2-622 report). In addition, Geleerd's sworn affidavit was based on Lerner's defective report. Further, as of March 17, 2005, the day the 90-day extension

expired, neither of plaintiff's other two health-care professionals was in a position to author a report that met the requirements of section 2-622. Moreover, instead of admitting to the court that he did not have a qualified health-care professional on hand, he tried to hide Lerner's identity and lack of qualifications.

The record shows that the trial court considered these particular facts and unique circumstances of this case in reaching its decision to dismiss plaintiff's complaint with prejudice. In our view, not only was the trial court's decision not an abuse of discretion, the court may have abused its discretion had it not dismissed the case with prejudice.

As a final matter, we commend the trial court for asking Geleerd probing questions. Had it not been for the court's questioning of Geleerd, it is very unlikely that it would ever have been discovered that the March 2005 section 2-622 affidavit and report did not meet the statutory requirements.

IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., concurs.

MYERSCOUGH, J., concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I concur in the affirmance of the trial court but strenuously object to the ruminations of the majority attempting to override O'Casek and resurrect Cargill. However, I agree the legislature clearly intended to retain the identity of the health-care professional language.

In Cargill, 353 Ill. App. 3d at 660, 818 N.E.2d at 904, this court noted that Public Act 90-579 contained the same language regarding the identity of the health-care professional and voluntary dismissals that had been contained in Pubic Act 89-7. The Cargill court concluded that Public Act 90-579 resurrected the amendments to section 2-622 of the Code as inserted by Public Act 89-7. Cargill, 353 Ill. App. 3d at 661, 818 N.E.2d at 905.

As noted in the majority, however, more recently, in O'Casek, another panel of this court found that the legislative enactments following Cargill demonstrated that the legislature never reenacted the civil-reform language regarding voluntary dismissals contained in Public Act 89-7 but instead continued in effect the earlier pre-1995 version of section 2-622(a)(2) of the Code. O'Casek, 374 Ill. App. 3d at 512-13, ___ N.E.2d at ___. Because O'Casek did not expressly make any ruling regarding the "identity of the health-care professional" language in section 2-622(a)(1), the majority's disagreement herein with O'Casek is at

- 31 -

best inappropriate and mere <u>dicta</u>.

An examination of the history of section 2-622 demonstrates that, as <u>O'Casek</u> held, the legislature never intended to reenact the voluntary-dismissal language contained in Public Act 89-7. However, the legislature did intend to reenact the language pertaining to the identification of the health-care professional. This fact distinguishes the instant case from <u>O'Casek</u>.

The following chart details the legislative changes:

|  | Identity of Health-Care Professional--section 2-622(a)(1) | Voluntary Dismissal --section 2-622(a)(2) |
|---|---|---|
| Pre-1995 | Allowed identity of health-care professional to be deleted | No restriction on right to voluntarily dismiss and refile if plaintiff could not obtain the required consultation |
| Public Act 89-7 (eff. March 9, 1995)<br><br>(In 1997, Best, 179 Ill. 2d 367, 689 N.E.2d 1057, declared Public Act 89-7 void.) | Required name and address | Contained requirement that plaintiff aver that he/she had "not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences" |
| Public Act 90-579 (eff. May 1, 1998) | Required name and address | Contained requirement that plaintiff aver that he/she had "not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences" |

| | | |
|---|---|---|
| Public Act 94-677 (eff. August 25, 2005)<br><br>Smith-Hurd Historical and Statutory Notes indicate that (1) Public Act 94-677 did not include the changes made by Public Act 89-7; and (2) prior to Public Act 94-677, this section did not require the identification of the health-care professional or contain the voluntary dismissal language. 725 ILCS Ann. 5/2-622, Historical & Statutory Notes, at 94-95 (Smith-Hurd Supp. 2007). (Note, however, the text in the main volume shows that the section, as amended by Public Act No. 90-579 did contain the voluntary dismissal language (735 ILCS Ann. 5/2-622(a)(2), at 964 (Smith-Hurd 2003)). | Required name, address, license number, and state of licensure | No restriction on right to voluntarily dismiss and refile if plaintiff could not obtain the required consultation |

Because the legislature clearly intended to retain the identity of the health-care professional language, this case is distinguishable from O'Casek, and the majority cannot overrule O'Casek. For this reason, I dissent insofar as the majority purports to do so.