NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230456-U

NO. 4-23-0456

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 19, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Stephenson County |
| Petitioner-Appellee, | ) | No. 21JA1 |
| v. | ) | |
| Richard B., | ) | Honorable |
| Respondent-Appellant). | ) | Peter J. McClanathan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Cavanagh and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, holding the trial court's unfitness finding was not
against the manifest weight of the evidence.

¶ 2    In December 2022, the State filed an amended petition to terminate the parental

rights of respondent, Richard B., as to his minor child, K.B. (born in August 2012). The minor's

mother is not a party to this appeal. However, the minor's mother appealed the termination of her

parental rights in appellate court case Nos. 4-23-0455 and 4-23-0457. In January 2023, the trial

court granted the State's amended petition and terminated respondent's parental rights.

Respondent appeals, arguing the court's unfitness finding was against the manifest weight of the

evidence. We affirm.

¶ 3    I. BACKGROUND

¶ 4    In January 2021, the State filed a petition seeking to adjudicate K.B. neglected

under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2020)). The State alleged

K.B. was neglected because of the uninhabitable living conditions in the residence of respondent, her legal father. In April 2021, the trial court adjudicated K.B. neglected due to being in an environment injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2020)). In May 2021, in a separate dispositional order, the court found respondent unfit to care for K.B. for reasons other than financial circumstances alone, made K.B. a ward of the court, and placed her custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 5 Several permanency reviews were held to monitor respondent's progress and case direction.

¶ 6 In December 2022, the State filed an amended petition to terminate respondent's parental rights as to K.B. The State alleged three bases on which respondent was unfit. First, respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of K.B. or to make reasonable progress toward her return within nine months after her adjudication as a neglected minor or any subsequent nine-month period, the period in question being from November 2021 to July 2022. 750 ILCS 50/1(D)(m)(i), (ii) (West 2022). Second, respondent failed to make reasonable efforts subsequently to correct the conditions that were the basis for the removal of K.B. or to make reasonable progress toward her return in the subsequent nine-month period of January 2022 to August 2022. 750 ILCS 50/1(D)(m)(i), (ii) (West 2022). Third, respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to K.B.'s welfare. 750 ILCS 50/1(D)(b) (West 2022).

¶ 7 At the December 6, 2022, fitness hearing, the trial court, without objection, took judicial notice of the January 2021 neglect petition, the April 2021 adjudication order, and permanency review hearing orders from November 2021 and July 2022. The court then heard testimony from one witness, Vanessa Langer, a DCFS case manager.

¶ 8            Langer testified that while she was not the currently assigned caseworker, she had previously been involved with the case for approximately one year. Langer testified the main issue with K.B.'s return to respondent was his living conditions. Langer described respondent's home as being "very cluttered" with "garbage," in addition to there being "feces on the carpet" and the "toilets [being] black." There also had been a mouse infestation. Langer visited respondent's home in December 2021 and returned in March 2022 to see only "minimal progress." (The progress was limited to respondent vacuuming the hallway; there was still no working bathtub or shower in the home.) Langer had not been able to see inside the home since March 2022 because respondent advised he was "still working on things and he would let me know when he was ready for me to come see the home." Respondent had Langer's contact information and was able to reach her if he made any further progress cleaning the home. Langer acknowledged respondent was cooperative with DCFS in other respects. The State rested and no additional evidence was presented.

¶ 9            During closing argument, the State asserted respondent had made "no significant progress" in the nearly two years since the commencement of the case. The State emphasized the hurdle for K.B. being returned to respondent was the poor condition of his home—"he's known this for over two years, and there's no progress on this home."

¶ 10           Counsel for DCFS argued that "we're really not anywhere further to getting the kids back *** since day one." Counsel noted "maintaining a clean and adequate household was one of the required services of [respondent], and that's something easy to do and that clearly has not been done."

¶ 11           Respondent's counsel proposed that as the trial court took judicial notice of the order from the November 9, 2021, permanency review hearing reflecting respondent made both

reasonable efforts and reasonable progress, the alleged period of unfitness spanning November 2021 to July 2022 "can't be satisfied." Respondent's counsel also proposed the home was in better condition in March 2022 than in December 2021, but "whether that's to the level of unsuitable for a child, I don't know that anybody in this courtroom can say that that's true or not true," particularly since no pictures of the home were presented as evidence.

¶ 12        The guardian *ad litem* argued respondent's "inaction" in correcting his unsuitable living conditions spoke volumes.

¶ 13        The trial court found respondent unfit as to the first ground alleged in the State's amended petition. The court acknowledged that "something as extreme as the termination of an individual's parental rights should not be lightly taken over *** the condition of a home. Individuals have widely varying degrees of what is acceptable for the keeping of one's home." Nevertheless, "a home must meet the basic standards of habitability for the return home goal to be achieved." The court explained:

"In this matter, [respondent] has been given repeated opportunities to show he has living conditions for the minor that meet the minimum levels of habitability for the minor. The testimony established that in the relevant period, the house was visited and documented in December 2021 and March 2022. In the March 2022 visit, when the agency was last allowed into [respondent's] residence, the house was extremely cluttered, with garbage around the house, animal hair and feces on the carpet, non-working shower or tub for the child, and non-working toilets covered inside with a black colored substance. At one point there had been a mouse infestation. While minimal efforts had been made to clean up some

- 4 -

of the garbage since the last time the caseworker was present, these issues had largely remained the same. ***

It should also be noted that at any point in time since January 8, 2021, the condition of the home could have been resolved simply by [respondent] showing an adequate residence to the caseworker. This is even more relevant when a habitable home was all that stood between returning the minor home after [respondent] had completed the other services."

¶ 14 The trial court found the State did not prove the second count of its petition. The court found the January 2022 to August 2022 period "was only an alleged eight-month period, and the statutory requirement is a nine-month period." The court also found the State did not prove the third count of the petition. According to the court, "the testimony established that [respondent], outside of placement disruptions, was consistent in his weekly supervised visits *** and made efforts to complete such services as parenting classes, and engaged in mental health services for a long period of time."

¶ 15 This appeal followed.

¶ 16                                  II. ANALYSIS

¶ 17 Respondent argues the trial court's finding he was unfit was against the manifest weight of the evidence. Specifically, respondent contends the State failed to present evidence of a full nine months where he failed to make reasonable efforts or reasonable progress. According to respondent, because the court took judicial notice of the order from the November 9, 2021, permanency review hearing reflecting he made both reasonable efforts and reasonable progress, the burden of proving unfitness spanning November 2021 to July 2022 could not be met.

¶ 18          Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). A parent may be found unfit if he fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." 750 ILCS 50/1(D)(m)(ii) (West 2022). Whether reasonable progress has been made can be determined by assessing "the parent's compliance with the service plans and the court's directives in light of the conditions that gave rise to the removal of the child and in light of other conditions that later became known and would prevent the court from returning custody of the child to the parent." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1051 (2003). This court has described "reasonable progress" as

> "an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphases omitted.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 19          We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such

that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 20    Here, the record shows the trial court's unfitness determination was not against the manifest weight of the evidence. Respondent cites no authority in support of his contention a finding of reasonable efforts and reasonable progress at a permanency review hearing during the nine-month period alleged in a termination petition renders a finding of unfitness as to that period against the manifest weight of the evidence. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires appellate briefs to contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." As we have stated, "[a] contention that is supported by some argument but no authority does not meet the requirements of Rule 341 and is considered forfeited." *Crull v. Sriratana*, 388 Ill. App. 3d 1036, 1045 (2009). Forfeiture aside, respondent's unsuitable living environment was the condition giving rise to K.B.'s removal from the home. Respondent was required to improve the condition of his home to allow K.B.'s return. The evidence established that when Langer visited respondent's home in December 2021, it was heavily cluttered with trash and animal feces, its toilets were covered with a black substance, there was no working bathtub or shower, and there had been a mouse infestation. When Langer returned in March 2022, she observed only "minimal progress" in the improvement of his living conditions; respondent had vacuumed the hallway. Langer had not been able to inspect respondent's home since March 2022 even though

respondent had her contact information and could let her know if or when he made the necessary improvements to the condition of the home.

¶ 21    As the trial court noted, parental rights should not be lightly terminated over the condition of a home. In this case, however, a habitable home was required for K.B.'s return. Respondent did not make sufficient progress towards this requirement despite having nearly two years within which to do so. The facts clearly demonstrate respondent had not made sufficiently demonstrable progress to allow the court to return K.B. to him in the near future. The facts do not clearly demonstrate the court should have reached the opposite result in finding respondent unfit. Accordingly, the court's determination that respondent was unfit was not against the manifest weight of the evidence.

¶ 22                              III. CONCLUSION

¶ 23    For the reasons stated, we affirm the trial court's judgment.

¶ 24    Affirmed.