Docket No. 105050.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MARJORIE O'CASEK, Special Administrator of the Estate of Carla
Thompson, Deceased, Appellee, v. CHILDREN'S HOME AND AID
SOCIETY OF ILLINOIS (OSF St. Joseph Medical Center *et al.*,
Appellants).

*Opinion filed June 19, 2008.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.
Justices Freeman, Kilbride, and Burke concurred in the judgment
and opinion.
Justice Karmeier dissented, with opinion, joined by Chief Justice
Thomas and Justice Garman.

## OPINION

Defendants, OSF Healthcare Systems (OSF), Richard D. Castillo,
M.D., and Susan G. Emmerson, M.D., appeal from a judgment of the
appellate court reversing the dismissal of plaintiff's medical
malpractice action. At issue is whether plaintiff, Marjorie O'Casek,
special administrator of the estate of Carla Thompson, deceased, was
entitled to a 90-day extension in which to file a certificate of merit, in
support of her malpractice action, as required by section 2–622 of the
Code of Civil Procedure (735 ILCS 5/2–622 (West 2002)).

Resolution of this issue turns on whether Public Act 90–579 reenacted that version of section 2–622 which this court held unconstitutional, on severability principles, in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). The appellate court held that, according to Public Act 94–677, that version of section 2–622 "disappeared with *Best* and was never reenacted." 374 Ill. App. 3d 507, 513. Accordingly, plaintiff was entitled to a 90-day extension and her complaint should be allowed to proceed. 374 Ill. App. 3d at 515.

For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND
### *History of Section 2–622*

Before 1995, section 2–622 of the Code of Civil Procedure (commonly known as the Healing Art Malpractice Act) stated in relevant part, as follows:

"§2–622. Healing art malpractice. (a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the

-2-

reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit, but information which would identify the reviewing health professional may be deleted from the copy so attached.

2. That the affiant was unable to obtain a consultation required by paragraph 1 because a statue of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the certificate and written report required by paragraph 1 shall be filed within 90 days after the filing of the complaint. The defendant shall be excused from answering or otherwise pleading until 30 days after being served with a certificate required by paragraph 1." 735 ILCS 5/2–622 (West 1994).

Under this version of section 2–622, upon the filing of an appropriate affidavit, a medical malpractice plaintiff was entitled to a 90-day extension to file the required certificate of merit, irrespective of whether the plaintiff had previously voluntarily dismissed his or her cause of action. *Cargill v. Czelatdko*, 353 Ill. App. 3d 654, 657 (2004); *Neuman v. Burstein*, 230 Ill. App. 3d 33, 37-38 (1992).

The Civil Justice Reform Amendments of 1995 (Pub. Act 89–7, eff. March 9, 1995) amended section 2–622 in two respects. First, the language in section 2–622(a)(1) permitting the identity of the reviewing health professional to be deleted from the report was

stricken from the statute and the following language was added: "The report shall include the name and the address of the health professional." Second, and relevant to this appeal, section 2–622(a)(2) was amended to add another requirement to the attorney affidavit, namely, that the "plaintiff has not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences." Thus, under Public Act 89–7, a plaintiff was precluded from obtaining a 90-day extension to file a certificate of merit if the plaintiff previously voluntarily dismissed the same or substantially the same cause of action.

On December 18, 1997, this court held Public Act 89–7 void in its entirety. *Best*, 179 Ill. 2d at 467. The amendments made to section 2–622 were not among the core provisions held substantively unconstitutional, but were nonetheless deemed invalid because the core provisions could not be severed from the balance of the act. *Best*, 179 Ill. 2d at 467. We noted that the General Assembly was "free to reenact whatever provisions it deems desirable or appropriate." *Best*, 179 Ill. 2d at 471. With our decision in *Best*, section 2–622 reverted to the pre-1995 version, quoted above.

On February 4, 1998, less than two months after our decision in *Best*, the General Assembly passed Public Act 90–579. Effective May 1, 1998, Public Act 90–579 amended section 2–622(a)(1) by adding naprapaths to the list of covered health professionals. Notably, however, Public Act 90–579 did not add naprapaths to the pre-1995 version of section 2–622 that was in effect after *Best*. Rather, it added naprapaths to the 1995 version struck down in *Best*. Public Act 90–579 stated:

"The Code of Civil Procedure is amended by changing Section 2–622 as follows:

(735 ILCS 5/2–622) (from Ch. 110, par. 2–622)

§2–622. Healing art malpractice.

(a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the

-4-

original and all the copies of the complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing such action. If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, ~~or~~ a psychologist, *or a naprapath*, the written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For affidavits filed as to all other defendants, the written report must be from a physician licensed to practice medicine in all its branches. In either event, the affidavit must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit. The report shall include the name and the address of the health professional.

2. That the plaintiff has not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences and that the

-5-

affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the certificate and written report required by paragraph 1 shall be filed within 90 days after the filing of the complaint. The defendant shall be excused from answering or otherwise pleading until 30 days after being served with a certificate required by paragraph 1.

\* \* \*

*(i) This amendatory Act of 1997 does not apply to or affect any actions pending at the time of its effective date, but applies to cases filed on or after its effective date.*" (Strikeouts and italics in original.) Pub. Act 90–579, eff. May 1, 1998.

During the next several years, no further amendments to section 2–622 were adopted, and no published opinion from the appellate court or this court directly addressed the effect of Public Act 90–579 on section 2–622. But see *Giegoldt v. Condell Medical Center*, 328 Ill. App. 3d 907, 912 (2002) (where the Second District implicitly recognized that Public Act 90–579 reenacted the 1995 version of section 2–622). In 2004, however, the Fourth District entertained an interlocutory appeal, pursuant to Rule 308(a) (155 Ill. 2d R. 308(a)), which expressly asked: "Did P.A. 90–579 resurrect the amendments to [s]ection 2–622 of the Code of Civil Procedure (inserted by P.A. 89–7) which had been found unconstitutional by the Illinois Supreme Court's decision in *Best v. Taylor Machine Works*"? *Cargill v. Czelatdko*, 353 Ill. App. 3d 654, 655 (2004). The appellate court answered in the affirmative. *Cargill*, 353 Ill. App. 3d at 661.

In *Cargill*, the appellate court noted that the legislature is presumed to act with knowledge of the prevailing case law. *Cargill*, 353 Ill. App. 3d at 658. Accordingly, the appellate court presumed that the legislature was aware of the *Best* ruling and its impact on Public Act 89–7. *Cargill*, 353 Ill. App. 3d at 658. The appellate court held that when the legislature passed Public Act 90–579, with the same language as in Public Act 89–7, the legislature intended it to have the same effect and was simply following the supreme court's

pronouncement in *Best* that desirable provisions could be reenacted. *Cargill*, 353 Ill. App. 3d at 660. The appellate court rejected the plaintiff's argument that Public Act 90–579 was defective because the operative language was not italicized. *Cargill*, 353 Ill. App. 3d at 660-61. The court explained that section 5 of the Statute on Statutes (5 ILCS 70/5 (West 2002)), on which the plaintiff relied, "does not require italics for new matters to be valid." *Cargill*, 353 Ill. App. 3d at 660. The appellate court concluded that, "in looking at the plain language of the statute, if a physician's report is not attached to the complaint, the plaintiff must attach an affidavit indicating he 'has not previously voluntarily dismissed an action based upon the same or substantially the same acts.' " *Cargill*, 353 Ill. App. 3d at 661, quoting 735 ILCS 5/2–622(a)(2) (West 2002). The appellate court further held that in a refiled healing art malpractice case the circuit court has no discretion to waive the affidavit requirement, and that failure to comply mandates dismissal of the complaint with prejudice. *Cargill*, 353 Ill. App. 3d at 662.

Approximately seven months following the *Cargill* opinion, the General Assembly passed Public Act 94–677. Effective August 25, 2005, Public Act 94–677 made various changes to Illinois law with the stated purpose of addressing the "health care crisis" and instituting "reforms to the civil justice system" and to "the current medical malpractice situation." Pub. Act 94–677, art. 1, §101, eff. August 25, 2005. Relevant to this appeal, section 330 of Public Act 94–677 amended the Code of Civil Procedure by "reenacting and changing" section 2–622. Pub. Act 94–677, art. 3, §330, eff. August 25, 2005. Unlike Public Act 90–579, which used the 1995 version of section 2–622, Public Act 94–677 used the pre-1995 version of section 2–622, with the exception that it also incorporated the naprapath amendment contained in Public Act 90–579. For clarity, we set forth below the pertinent provisions of Public Act 94–677:

> "The Code of Civil Procedure is amended by reenacting and changing Sections 2–622 and 8–2501, by changing Section 8–1901, and by adding Sections 2–1704.5 and 2–1706.5 as follows:
>
> (735 ILCS 5/2–622) (from Ch. 110, par. 2–622)
>
> (Text of Section WITHOUT the changes made by P.A. 89–7, which has been held unconstitutional)

Sec. 2–622. Healing art malpractice.

(a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1. That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last *5* ~~6~~ years or teaches or has taught within the last *5* ~~6~~ years in the same area of health care or medicine that is at issue in the particular action; and (iii) *meets the expert witness standards set forth in paragraphs (a) through (d) of Section 8–2501;* ~~is qualified by experience or demonstrated competence in the subject of the case;~~ that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action. *A single written report must be filed to cover each defendant in the action. As to defendants who are individuals, the* ~~If the affidavit is filed as to a defendant who is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, a psychologist, or a naprapath, The~~ written report must be from a health professional licensed in the same profession, with the same class of license, as the defendant. For *written reports* ~~affidavits~~ filed as to all other defendants, *who are not individuals*, the written report must be from a physician licensed to practice

-8-

medicine in all its branches *who is qualified by experience with the standard of care, methods, procedures and treatments relevant to the allegations at issue in the case.* In either event, the *written report* ~~affidavit~~ must identify the profession of the reviewing health professional. A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, *including the reviewing health care professional's name, address, current license number, and state of licensure*, must be attached to the affidavit~~, but information which would identify the reviewing health professional may be deleted from the copy so attached~~. *Information regarding the preparation of a written report by the reviewing health professional shall not be used to discriminate against that professional in the issuance of medical liability insurance or in the setting of that professional's medical liability insurance premium. No professional organization may discriminate against a reviewing health professional on the basis that the reviewing health professional has prepared a written report.*

2. That the affiant was unable to obtain a consultation required by paragraph 1 because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. If an affidavit is executed pursuant to this paragraph, the *affidavit* ~~certificate~~ and written report required by paragraph 1 shall be filed within 90 days after the filing of the complaint. *No additional 90-day extensions pursuant to this paragraph shall be granted, except where there has been a withdrawal of the plaintiff's counsel.* The defendant shall be excused from answering or otherwise pleading until 30 days after being served with *an affidavit and a report* ~~a certificate~~ required by paragraph 1.

\* \* \*

*(j) The changes to this Section made by this amendatory Act of the 94th General Assembly apply to causes of action accruing on or after its effective date.*" (Strikeouts and italics in original.) Pub. Act 94–677, eff. August 25, 2005.

The effect of Public Acts 90–579 and 94–677 on section 2–622 is the subject of the present dispute, to which we now turn.[1]

*The Present Dispute*

On August 30, 2002, plaintiff filed an amended complaint at law in the Cook County circuit court alleging medical malpractice by defendants in connection with a tonsillectomy performed on decedent, Carla Thompson, on August 29, 2000.[2] Attached to the amended complaint was an affidavit provided by plaintiff's attorney stating that he had been unable to obtain a consultation with a health professional before the expiration of the statute of limitations, and that the required certificate and report would be filed within 90 days. Plaintiff failed to do so, and defendant Emmerson filed a section 2–619 motion to dismiss (735 ILCS 5/2–619 (West 2002). Plaintiff responded with a motion to voluntarily dismiss the complaint (735 ILCS 5/2–1009 (West 2002)). The trial court granted plaintiff's motion without prejudice.

One year later, on February 23, 2004, plaintiff refiled her cause of action. Although the refiled action was brought in Cook County, the cause was later transferred, on OSF's motion, to McLean County. Attached to the refiled complaint was an affidavit from plaintiff's counsel stating that he had been unable to obtain a consultation with

---

[1]On November 13, 2007, the circuit court of Cook County, in case No. 2006 L 12109, declared a portion of Public Act 94–677 unconstitutional and the act invalid in its entirety. That ruling has been appealed directly to this court pursuant to Supreme Court Rule 302 (210 Ill. 2d R. 302(a)(1)) and is currently pending. Lebron v. Gottlieb Memorial Hospital, Nos. 105741, 105745 cons.

[2]The amended complaint, as well as the refiled complaint, included a negligence count against the Children's Home and Aid Society, which owned and operated the residential facility where the decedent resided. This entity is not a party to this appeal.

a health professional and that the required certificate and report would be filed within 90 days. Within the 90 days, plaintiff's attorney filed a certificate of merit with a physician's report.

Defendants OSF and Castillo filed a section 2–619 motion to dismiss arguing, in relevant part, that plaintiff had failed to satisfy the requirements of section 2–622. Relying on the appellate court's opinion in *Cargill*, defendants maintained that where, as here, a certificate of merit is not attached to the complaint, the plaintiff's attorney must file an affidavit stating, in pertinent part, that plaintiff " 'has not previously voluntarily dismissed an action based upon the same or substantially the same acts.' " *Cargill*, 353 Ill. App. 3d at 661, quoting 735 ILCS 5/2–622(a)(2) (West 2002). Defendants argued that in light of the earlier voluntary dismissal of plaintiff's complaint, plaintiff could not satisfy the affidavit requirements of section 2–622 and plaintiff's cause of action should be dismissed. Defendant Emmerson filed a similar dismissal motion. In response, plaintiff argued that the affidavit requirement on which defendants relied violates the equal protection clause of the federal and state constitutions by imposing an excessive restriction on medical malpractice plaintiffs' access to the judicial system, without a compelling state interest. See U.S. Const., amend. XIV, §1; Ill. Const. 1970, art. I, §2. The trial court rejected plaintiff's equal protection argument and granted defendants' dismissal motions.

Plaintiff filed a motion for reconsideration, arguing for the first time that Public Act 90–579 was passed in violation of the three-readings clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). Plaintiff further argued, for the first time, that section 2–622 violates due process (U.S. Const., amend. XIV, §1; Ill. Const. 1970, art. I, §2) and constitutes impermissible special legislation (Ill. Const. 1970, art. IV, §13). Plaintiff also reasserted her equal protection challenge. Defendant Emmerson filed a motion to strike plaintiff's reconsideration motion, arguing that plaintiff improperly raised new legal theories. See *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 166 (1999).

While the foregoing motions were pending, Public Act 94–677 became law. A month later, plaintiff sought leave to supplement her reconsideration motion. In her supplement, plaintiff argued that Public Act 94–677 clearly establishes that the General Assembly did

not intend Public Act 90–579 to make substantive changes to section 2–622, other than to add naprapaths to the list of health professionals. According to plaintiff, the holding in *Cargill*–that Public Act 90–579 reenacted the 1995 version of section 2–622–was made in error, and that under the pre-1995 version of section 2–622, she was entitled to obtain a 90-day extension to file a certificate of merit, notwithstanding her prior voluntary dismissal. Defendants objected to plaintiff's supplement, arguing that plaintiff was improperly raising new issues, the circuit court was bound by *Cargill*, and plaintiff's supplement should be stricken.

The circuit court denied plaintiff's motion for reconsideration. The record does not disclose the basis for the court's ruling.

Plaintiff appealed the dismissal of her complaint and the denial of her reconsideration motion. The Fourth District, with dissent, reversed. 374 Ill. App. 3d 507. The majority held that, according to Public Act 94–677, the 1995 version of section 2–622 "disappeared with *Best* and was never reenacted." 374 Ill. App. 3d at 513. The majority focused on the parenthetical language that appears in Public Act 94–677, prior to the text of the amendment. 374 Ill. App. 3d at 512. This language states: "(Text of Section WITHOUT the changes made by P.A. 89–7, which has been held unconstitutional)." (Emphasis in original.) Pub. Act 94–677, §330, eff. August 25, 2005. The majority viewed this language as an explicit rejection of the 1995 version of section 2–622. 374 Ill. App. 3d at 512. The majority also concluded that the legislature's use of the pre-1995 version of section 2–622 as a template for the amendments made by Public Act 94–677 should be construed as a continuation of an old law and not as a new enactment. 374 Ill. App. 3d at 513. The majority concluded that "[t]he legislature recognized Public Act 90–579 for its naprapath amendment, but *not*, in contradiction to *Cargill*'s assessment of Public Act 90–579's effect, for any reenactment of the civil-reform language." (Emphasis in original.) 374 Ill. App. 3d at 513. Because the pre-1995 version of section 2–622 allowed a 90-day extension to file the required certificate and physician's report, without regard to whether the plaintiff had previously taken a voluntary dismissal, the appellate court reversed the dismissal of plaintiff's complaint and remanded the matter to the trial court. 374 Ill. App. 3d at 515.

Justice Knecht, in dissent, maintained that the circuit court properly relied on the precedent established in *Cargill*, which was correctly decided, and that the majority's approach was flawed. "The majority proposes to reverse that careful adherence to precedent by deferring to a later legislative enactment that attempts to say that is not what the law was because that is not what we wanted it to be. The legislature does not interpret its enactments–the courts do." 374 Ill. App. 3d at 515 (Knecht, J., dissenting).

Defendants filed a petition for rehearing and an application for a certificate of importance. See Ill. Const. 1970, art. VI, §4(c); 155 Ill. 2d R. 316. The appellate court denied the rehearing petition, but granted the application for a certificate of importance. The certificate states that it is granted "to review the issue of whether Public Act 90–579 resurrected the civil-reform version of section 2–622 of the Code of Civil Procedure." Under Rule 316, however, "the whole case comes before us and not just a particular issue." *People v. Crawford Distributing Co.*, 78 Ill. 2d 70, 73 (1979).


ANALYSIS

The purpose of a section 2–619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Here, the basis for defendants' dismissal motions was the plaintiff's alleged failure to comply with the affidavit and certificate requirements of section 2–622. Throughout this litigation section 2–622(g) has provided that the failure to file a certificate required by section 2–622 shall be grounds for dismissal under section 2–619. See, *e.g.*, 735 ILCS 5/2–622(g) (West 2002).

On appeal from a section 2–619 motion, the reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). A court's disposition of a section 2–619 motion is reviewed *de novo*. *Van Meter*, 207 Ill. 2d at 368.

Whether dismissal was proper in this case turns on an issue of statutory construction. Before we reach this issue, however, we must

consider two preliminary matters defendants raise: (1) whether plaintiff forfeited review of the statutory construction issue, as well as other issues first raised in plaintiff's reconsideration motion and supplement; and (2) whether principles of *stare decisis* precluded the appellate court from reexamining its earlier decision in *Cargill*.

*Forfeiture*

Defendants argue that, with the exception of her equal protection argument, plaintiff forfeited consideration of the issues raised in her reconsideration motion and supplement by failing to raise such issues earlier. See *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991) (stating that litigants should not be permitted to stand mute, lose a motion, and then gather new material to show the court erred in its ruling). The appellate court rejected defendants' forfeiture argument, citing the "court's duty to maintain a sound body of precedent," as well as the oft-cited proposition that forfeiture is a limitation on the parties and not the court. 374 Ill. App. 3d at 514. For the following reasons, we also reject defendants' forfeiture argument.

The lead argument in plaintiff's supplement to her reconsideration motion concerned the effect of Public Act 94–677 on section 2–622. Plaintiff could not have raised this argument in response to defendants' dismissal motions or in her initial reconsideration motion because Public Act 94–677 had not yet been enacted. While plaintiff's reconsideration motion was pending, the General Assembly passed Public Act 94–677 and, within a month of its effective date, plaintiff sought leave to supplement her reconsideration motion. Because plaintiff raised this argument at the first opportunity to do so, we decline defendant's invitation to find this issue forfeited based on a claim of untimeliness.

Plaintiff also raised new issues on reconsideration that were independent of Public Act 94–677. Plaintiff argued that the legislative history of Public Act 90–579 demonstrated that the legislature did not intend to reenact the 1995 version of section 2–622. Plaintiff also raised new constitutional challenges to the statute. To the extent plaintiff forfeited consideration of these issues by failing to raise them sooner, we will overlook any forfeiture in the interest of maintaining

-14-

a sound and uniform body of precedent. *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967); accord *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004). As discussed below, the law within the Fourth District regarding the various amendments to section 2–622 is confused and the potential exists for conflict among the appellate districts.

We note that while this case was being briefed in this court, another panel of the Fourth District "overruled" the appellate court judgment now under review. *Crull v. Sriratana*, 376 Ill. App. 3d 803 (2007). *Crull* states:

> "[W]e need to clarify this court's position regarding our earlier decision in *Cargill*, upon which we rely here, and which the *O'Casek* court concluded was incorrectly decided. We disagree with that conclusion and adhere both to *Cargill*'s result and analysis. To the extent that *O'Casek* is inconsistent with *Cargill* or this case, *O'Casek* is hereby overruled." *Crull*, 376 Ill. App. 3d at 817.

But see *Crull*, 376 Ill. App. 3d at 819 (Myerscough, J., specially concurring in part and dissenting in part) (stating that the majority's disagreement with *O'Casek* "is at best inappropriate and mere *dicta*").

Additionally, the First District, in *Beauchamp v. Zimmerman*, 359 Ill. App. 3d 143 (2005), has given a favorable nod to the *Cargill* opinion. *Beauchamp* states:

> "[T]here has been some confusion regarding the effect of Public Act 90–579. Some have argued that Public Act 90–579 was intended only to extend the requirements of section 2–622 to those who practice the healing art of 'naprapathy,' rather than to reenact the pre-*Best* [*i.e.*, 1995] version of section 2–622; however, that argument was squarely rejected by this court in *Cargill*, 353 Ill. App. 3d at 658, 818 N.E. 2d at 903. Thus, the provisions of section 2–622 limiting the statute of limitations exception to plaintiffs who have not already voluntarily dismissed the same or substantially the same claim, as well as the portion requiring that the consulting physician's name and address be indicated on the report, apply with full force here." *Beauchamp*, 359 Ill. App. 3d at 148 n.1.

See also *Giegoldt*, 328 Ill. App. 3d at 912 (where the Second District implicitly recognized that Public Act 90–579 reenacted the 1995 version of section 2–622).

Our decision to overlook any forfeiture in this case is made with the recognition that the new issues plaintiff raised were all issues of law which involved no problem of proofs, and that defendants were not deprived of an opportunity to present argument on these issues in the circuit court. See *Hux*, 38 Ill. 2d at 225.


*Stare Decisis*

Defendants also argue that this court should reverse the appellate court judgment in order to affirm principles of *stare decisis*. Defendants maintain that adherence to precedent is required unless it can be shown that "serious detriment is likely to arise that will prejudice the public interest." *People v. Worden*, 299 Ill. App. 3d 836, 838 (1998). According to defendants, "the majority's overturning of its own *Cargill* decision does not advance the public interest. Instead, the decision does a disservice to all of the lower courts, courts of review and litigants that relied on the *Cargill* decision over the course of the last few years."

"The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion." *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). Where a court of review reexamines an issue already ruled upon and arrives at an inapposite decision, the straight path of *stare decisis* is affected, as well as the reliance interests of litigants, the bench, and the bar. These concerns, however, provide an insufficient basis on which to reverse the appellate court in the present case.

" '[S]*tare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts.' " *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 392 n.2 (2005), quoting *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1102 (1998). Thus, the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels. *Gillen*, 215 Ill. 2d at 392 n.2. The appellate court here was not bound by the earlier *Cargill* opinion and

could part company with that decision without offending the doctrine of *stare decisis*. Whether the appellate court correctly concluded that the adoption of Public Act 94–677, which was not in existence when *Cargill* was decided, justifies a different result is an issue distinct from whether the appellate court was required to follow *Cargill*. On the latter issue, we find no error. Accordingly, we turn to the substantive issue before this court–whether Public Act 90–579 reenacted the 1995 version of section 2–622 that was struck down in *Best*.

*Statutory Construction*

Issues of statutory construction present questions of law that we review *de novo*. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). As in all cases of statutory construction, our primary objective is to ascertain and give effect to the intent of the legislature. *Donald A.G.*, 221 Ill. 2d at 246.

Defendants maintain that the appellate court erred in relying on Public Act 94–677 to ascertain the intent of the General Assembly when it adopted Public Act 90–579 seven years earlier. Defendants assert that the appellate court's judgment creates instability in the law because any enactment would be subject to the vagaries of a later legislative body. Defendants also argue, in line with the dissenting justice, that the appellate court opinion effectively permits the legislature to both enact statutes and interpret them, running afoul of the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1). Finally, defendants argue that the appellate court opinion effectively holds that Public Act 94–677 changed the law enacted seven years earlier, stripping defendants of a "vested defense," in violation of their due process rights (Ill. Const. 1970, art. I, §2).

Plaintiff counters that the appellate court appropriately considered Public Act 94–677 in discerning the legislature's intent when it passed Public Act 90–579. Plaintiff maintains that Public Act 90–579 is ambiguous and a court may, therefore, consider subsequent amendments, as well as legislative history, to determine legislative intent. Finally, plaintiff argues that this court's opinion in *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334 (2005), which postdates

-17-

*Cargill*, supports the conclusion that Public Act 90–579 did not reenact the 1995 version of section 2–622.

We begin our analysis by noting a fundamental rule of statutory construction: "Statutes are to be construed as they were intended to be construed when they were passed." *People v. Boreman*, 401 Ill. 566, 572 (1948). Thus, the legislative intent that controls the construction of a public act is the intent of the legislature which passed the subject act, and not the intent of the legislature which amends the act. *Boreman*, 401 Ill. at 572.

Discerning legislative intent can be a thorny task, made even more problematic when we attempt to discern prior legislative intent based on the actions of a different legislature. As former Chief Justice Clark observed:

> "It is difficult enough, at times, to figure out what one legislature 'intended' by a particular statute or provision. After all, our General Assembly is not an actual person who feels, reasons, intends, and acts as a unit. Instead it is a collective entity, made up of 118 flesh-and-blood individuals who, in the privacy of their own minds, may mean by any particular provision anything or nothing. The collective nature of a legislative body impels us to seek 'intent' in the objective words of its statutes, as informed by our own judgment and common sense, rather than in the inevitably subjective thoughts of individual members.
>
> This task is complicated enough. We complicate it still further when we seek to infer what one legislature intended from the subsequent action of a later legislature, composed of different members and perhaps working towards different purposes." *People v. Hicks*, 119 Ill. 2d 29, 39 (1987) (Clark, C.J., dissenting, joined by Simon, J.).

See also *Roth v. Yackley*, 77 Ill. 2d 423, 428 (1979) ("it is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute seven years earlier since only a fraction of the individuals who comprised the General Assembly were the same at both times"). Thus, courts

must proceed cautiously when examining future legislative enactments for evidence of past legislative intent.

In the present case, the appellate court examined Public Act 94–677, passed by the 94th General Assembly, to determine the intent of the 90th General Assembly when it passed Public Act 90–579 seven years earlier. The appellate court first focused on the following parenthetical language that appears in Public Act 94–677 prior to the text of the amendment: "(Text of Section WITHOUT the changes made by P.A. 89–7, which has been held unconstitutional)." (Emphasis in original.) Pub. Act 94–677, §330, eff. August 25, 2005. The appellate court read this language as an explicit rejection by the General Assembly of the 1995 version of section 2–622. 374 Ill. App. 3d at 512.

Defendants maintain, however, that this language was added not by the legislature, but by the Legislative Reference Bureau, as part of its statutory duties, after Public Act 94–677 was adopted. Defendants argue the language is merely shown for reference and is not a part of the act. See 25 ILCS 135/0.01 *et seq.* (West 2004) (establishing the Bureau and defining its duties); Legislative Reference Bureau, *Illinois Bill Drafting Manual* §25–50, at 101–02, §70–30, at 206-07 (January 2007) (discussing parenthetical references). Defendants argue in the alternative that, even if the legislature added this language, it is akin to a preamble or title, which is not dispositive of legislative intent. See *Atkins v. Deere & Co.*, 177 Ill. 2d 222, 228 (1997).

We will assume, *arguendo*, that the parenthetical language, if not added by the legislature, was at least before the legislature when it adopted Public Act 94–677. That said, we agree with defendants that the parenthetical language does not evince legislative intent. Rather, this language is informational, *i.e.*, the text of the amendment that follows the parenthetical language is, in fact, the text of section 2–622 without the changes made by Public Act 89–7, which was held unconstitutional. To the extent this language could be read as some evidence of legislative intent, at most, it speaks to the intent of the 94th General Assembly when it adopted Public Act 94–677 and not the intent of the 90th General Assembly when it adopted Public Act 90–579.

The appellate court's determination that Public Act 90–579 did not reenact the 1995 version of section 2–622 was also based on its

-19-

conclusion that Public Act 94–677 "continued" the pre-1995 version of section 2–622, recognizing Public Act 90–579 only for its naprapath amendment. 374 Ill. App. 3d at 513. While we agree that Public Act 94–677 appears to recognize Public Act 90–579 only for its naprapath amendment, we are reluctant to conclude that Public Act 94–677 merely continued the pre-1995 version of section 2–622. We note that section 330 of Public Act 94–677 plainly states: "The Code of Civil Procedure is amended by *reenacting* and changing Section[ ] 2–622 ***." (Emphasis added.) Pub. Act 94–677, art. 3, §330, eff. August 25, 2005. "Reenact" means "to enact (as a law) again." Webster's Third New International Dictionary 1907 (1993). "To reenact" does not mean "to continue." Thus, any conclusion about the legislature's intent based on a purported continuation of the pre-1995 law is not on firm ground.

The difficulty encountered above, in discerning the intent of the 90th General Assembly based on the actions of the 94th General Assembly, is precisely the situation about which Justice Clark warned. *Hicks*, 119 Ill. 2d at 39 (Clark, C.J., dissenting, joined by Simon, J.). Thus, we return to the rule of statutory construction with which we began our analysis: "Statutes are to be construed as they were intended to be construed when they were passed." *Boreman*, 401 Ill. at 572.

Public Act 90–579 was passed seven weeks after this court's decision in *Best*. We presume that the legislature was aware of the *Best* decision, including this court's pronouncement that it was free to reenact whatever provisions in Public Act 89–7 it deemed desirable or appropriate. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003) (legislature is presumed to act with knowledge of the prevailing case law). Application of this presumption lends support to the inference that the legislature did just that–reenacted a provision of Public Act 89–7 it deemed desirable. As plaintiff argues, however, new matter in an amendatory act is indicated by italics or underscoring. In this regard, the General Assembly Operations Act expressly states:

> "In the case of an amendatory Act, the changes made by the amendatory Act shall be indicated in the session laws in the following manner: (i) all new matter shall be underscored; and (ii) all matter deleted by the amendatory Act shall be shown crossed with a line." 25 ILCS 10/10(f) (West 2004).

In addition, the Statute on Statutes provides:

> "In construing an amendatory Act printed in any volume of the session laws published after January 1, 1969, matter printed in italics shall be construed as new matter added by the amendatory Act, and matter shown crossed with a line shall be construed as matter deleted from the law by the amendatory Act." 5 ILCS 70/5 (West 2004).

Similarly, the Illinois House and Senate rules currently provide, as they did when Public Act 90–579 was adopted, that in any bill that amends a statute "[a]ll new matter shall be underscored" and "[a]ll matter that is to be omitted or superseded shall be shown crossed with a line." 95th Ill. Gen. Assem. House R. 37(e), Senate R. 5–1(e); 90th Ill. Gen. Assem. House R. 37(e), Senate R. 5–1(e).[3]

Because the Illinois Constitution requires that a "bill expressly amending a law shall set forth completely the sections amended" (Ill. Const. 1970, art. IV, §8(d)), the requirement of italics or underscoring to highlight new matter plays an important role in discerning legislative intent. Here, the only words highlighted in Public Act 90–579 are the words adding naprapaths to the list of health professionals, lending support to the inference that this was the only change the legislature intended. Pub. Act 90–579, eff. May 1, 1998.

To resolve these competing inferences regarding the intent of the legislature, we will go outside the language of Public Act 90–579 and examine its legislative history. Defendants argue that the language of Public Act 90–579 is unambiguous and resort to extrinsic aids, like legislative history, is inappropriate. We agree that "[w]hen the drafters' intent can be ascertained from the statutory language, it must be given effect without resort to other aids for construction." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Here we cannot discern the drafters' intent from the language of Public Act 90–579, however plain it may be. As the appellate court explained: "The question is not whether the civil-reform version of section 2–622, if validly resurrected, plainly prohibits a 90-day extension where a

---

[3]We note that italics and underscoring are used interchangeably. See generally The Bluebook: A Uniform System of Citation 23 (18th ed. 2005) (discussing typeface conventions).

plaintiff has previously voluntarily dismissed. The question is whether Public Act 90–579 *did in fact resurrect* the civil-reform version of section 2–622." (Emphasis in original.) 374 Ill. App. 3d at 514-15.

Public Act 90–579 began its life as Senate Bill 120. On January 29, 1998, approximately six weeks after *Best* was decided, Senator Robert Madigan addressed Senate Bill 120:

> "Senator Madigan: *** The Conference Committee Report No. 1 to Senate Bill 120 puts naprapaths or the practice of naprapathy in line with other medical professions when it comes to [a] malpractice suit by stating that an affidavit against a naprapath in a malpractice suit has to be completed by another naprapath. That's simply all that it does. I–I am aware of no opposition to this bill and would ask favorable consideration of Conference Committee Report No. 1 to Senate Bill 120." 90th Ill. Gen. Assem., Senate Proceedings, January 29, 1998, at 46 (statements of Senator Madigan).

The Senate immediately thereafter took a vote, unanimously adopting the Conference Committee Report. Senate Bill 120 was declared passed. 90th Ill. Gen. Assem., Senate Proceedings, January 29, 1998, at 46. Less than a week later, Representative Daniel Burke spoke on Senate Bill 120 to his colleagues in the House:

> "Burke: *** Senate Bill 120, having passed out of the Senate and just considered in our committee, Executive Committee, yesterday, has to do with the practice of Naprapathy in the state, and, in particular, when a malpractice action is brought against any naprapath in the state, currently, only a medical doctor would be asked to testify in that action. We are asking that the statute be amended to suggest and include naprapaths as the professional that would testify in malpractice actions ***." 90th Ill. Gen. Assem., House Proceedings, February 4, 1998, at 10 (statements of Representative Burke).

The House of Representatives thereafter took a vote, unanimously adopting the Conference Committee Report. Senate Bill 120 was

declared passed. 90th Ill. Gen. Assem., House Proceedings, February 4, 1998, at 11.

The legislative history is devoid of any discussion of *Best* or the Civil Justice Reform Amendments that it struck. In addition, the legislative history affirmatively demonstrates that the General Assembly's intent, when it adopted Public Act 90–579, was simply to add naprapaths to the coverage of section 2–622. This is consistent with the fact that only the naprapath language was highlighted. Although, in giving the amendment context, the legislature used the 1995 version of section 2–622, we regard this as a legislative oversight. Accordingly, we hold that Public Act 90–579 did not reenact the version of section 2–622 that this court held invalid in *Best*. To the extent that *Cargill*, *Crull*, and other cases hold otherwise, they are hereby overruled.

Our holding is consistent with this court's opinion in *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334 (2005). There we considered, *inter alia*, whether the legislature intended to reenact certain limitations on lender charges in section 4.1a of the Interest Act (815 ILCS 205/4.1a (West 2002)), which had been implicitly repealed in 1981, when the legislature amended that section in 1991. See Pub. Act 87–496, eff. January 1, 1992. The 1991 amendment added two provisions, but otherwise left unchanged the text of the statute that had been implicitly repealed. The defendants argued that if the relevant portion of section 4.1a was implicitly repealed in 1981, then the amendment of that section in 1991 constituted its "readoption." *U.S. Bank*, 216 Ill. 2d at 353. We rejected this argument:

> "Our Statute on Statutes provides that 'the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.' 5 ILCS 70/2 (West 2004). While this general rule is not limited to cases of implicit repeal, it is relevant to our analysis in that context. Specifically addressing the requirements for reenacting an implicitly repealed statute, this court explained in *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 8 (1993), that the legislature 'must *expressly reenact* a statute which has been repealed by implication to render it valid and enforceable again.' (Emphasis added.)

-23-

Here, the [relevant] portion of section 4.1a *** was not changed by the 1991 amendment. The text of Public Act 87–496 clearly designated the amendment as consisting of the addition of subparts (e) and (f), highlighting those provisions while merely reprinting, unchanged, the remaining, preexisting text. See Pub. Act 87–496, eff. January 1, 1992 (amending Ill. Rev. Stat. 1989, ch. 17, par. 6406). Nothing in the text or structure of the amendatory act reveals any legislative 'express' intent to 'reenact' the ceiling on lender charges in section 4.1a. Indeed, our Statute on Statutes specifically precludes that conclusion. See 5 ILCS 70/2 (West 2004); *Lily Lake*, 156 Ill. 2d at 7." *U.S. Bank*, 216 Ill. 2d at 354.

In *U.S. Bank* we also rejected the defendants' argument that the legislature, when it adopted the 1991 amendment, was attempting to overcome the implicit repeal of section 4.1a's limitation provisions that was recognized in *Currie v. Diamond Mortgage Corp. of Illinois*, 859 F.2d 1538 (7th Cir. 1988). *U.S. Bank*, 216 Ill. 2d at 356. In rejecting this argument, we considered, among other things, the legislative history of the 1991 amendment, finding that it was wholly devoid of any discussion of cases or rulings considering the issue of implicit repeal. *U.S. Bank*, 216 Ill. 2d at 356. We held that in the absence of any indication in either the language of the statute or its legislative history, we could not conclude that the legislature reenacted the implicitly repealed portion of section 4.1a by its 1991 amendment, thus rendering the lender charge limitation in section 4.1a enforceable and valid again. *U.S. Bank*, 216 Ill. 2d at 356.

We recognize that *U.S. Bank* involved the implicit repeal of a statute, whereas the present case involves the express invalidation of a public act by this court. Accordingly, the rule we applied in *U.S. Bank*–that the legislature must *expressly reenact* a statute which has been repealed by implication to render it valid and enforceable again–is inapplicable here. We also recognize, however, that our task in *U.S. Bank* was, at bottom, the same task we face today–discerning legislative intent in connection with a claimed reenactment–and the indicia of such intent that we examined in *U.S. Bank* are equally applicable to the case at bar. Thus, notwithstanding the difference between the two cases, favorable comparisons may be drawn.

-24-

Here, as in *U.S. Bank*, the amendment (Public Act 90–579), which defendants claim reenacted the invalid statute (the 1995 version of section 2–622), highlighted a minor amendment (the addition of the naprapath language) while merely reprinting, unchanged, the balance of the text. As we observed in *U.S. Bank*, nothing in the "text or structure" of the amendment indicates an intent to reenact the invalid statute. *U.S. Bank*, 216 Ill. 2d at 354. Further, like *U.S. Bank*, the legislative history of the public act at issue contains no discussion of the opinion (*Best*) that rendered the underlying statute (Public Act 89–7) invalid. Finally, as in *U.S. Bank*, we will not construe the mere iteration of a prior law as a new enactment. See 5 ILCS 70/2 (West 2004); 735 ILCS 5/1–102 (West 2004). Thus, the conclusion we reach here is necessarily the same conclusion we reached in *U.S. Bank*: the legislature did not intent a reenactment.

Based on the foregoing, we agree with plaintiff that her medical malpractice complaint is governed by the pre-1995 version of section 2–622, as amended with the addition of the naprapath language found in Public Act 90–579. That version contains no limitation on obtaining a 90-day extension to file a certificate of merit in a refiled action. See 735 ILCS 5/2–622 (West 1994); *Cargill*, 353 Ill. App. 3d at 657; *Neuman*, 230 Ill. App. 3d at 37-38. No dispute exists that plaintiff filed her certificate of merit within 90 days of her refiled complaint. Therefore, we affirm the judgment of the appellate court reversing the circuit court's dismissal of plaintiff's complaint.

## Separation of Powers and Due Process

Defendants argue that affirmance of the appellate court judgment would effect a violation of our state constitution. Specifically, defendants argue that the appellate court opinion permits the legislature to both enact statutes and interpret them, running afoul of the separation of powers clause (Ill. Const. 1970, art. II, §1). In addition, defendants argue that the appellate court opinion effectively holds that Public Act 94–677 changed the law enacted seven years earlier, stripping defendants of a "vested defense," in violation of their due process rights (Ill. Const. 1970, art. I, §2).

Although we affirm the appellate court judgment, as discussed above, we do not adopt the reasoning of the appellate court. The

appellate court's determination of whether Public Act 90–579 reenacted the 1995 version of section 2–622 was based upon an examination of Public Act 94–677. Our determination of this issue, however, ultimately rests on our examination of Public Act 90–579. Accordingly, the constitutional provisions defendants cite are not implicated by our holding, and we find it unnecessary to consider defendants' constitutional arguments further.

CONCLUSION

For the reasons discussed, we affirm the judgment of the appellate court reversing the dismissal of plaintiff's complaint.

*Affirmed*.

JUSTICE KARMEIER, dissenting:

Contrary to the majority, I would hold that the circuit court properly dismissed plaintiff's medical malpractice action with prejudice based on her failure to comply with the provisions of section 2–622 of the Code of Civil Procedure (735 ILCS 5/2–622 (West 2004)). As the majority's opinion explains, plaintiff had previously taken a voluntary dismissal of her complaint. When she refiled the action in February of 2004, she failed to attach to her complaint the affidavit required by section 2–622(a)(1) of the Code (735 ILCS 5/2–622(a)(1) (West 2004)) declaring that she had consulted with a health professional who believed that she had reasonable and meritorious cause for filing the action. Section 2–622(g) of the Code (735 ILCS 5/2–622(g) (West 2004)) expressly provides that the failure to include such a certificate "shall be grounds for dismissal under Section 2–619" of the Code (735 ILCS 5/2–619 (West 2004)). When defendants moved to dismiss under section 2–619 based on the absence of the requisite certification, the court therefore had no discretion regarding how to proceed. Dismissal was mandatory. See *Hull v. Southern Illinois Hospital Services*, 356 Ill. App. 3d 300, 305 (2005).

Plaintiff believed that she could avoid this result by including an affidavit from her lawyer indicating that he had been unable to obtain a consultation with a health professional before expiration of the

statute of limitations and indicating that the required certificate and report would be filed within 90 days. That approach was untenable. Although section 2–622(a)(2) of the Code (735 ILCS 5/2–622(a)(2) (West 2004)) authorizes the use of such an affidavit to defer compliance with the certification requirement of section 2–622(a)(1), the statute expressly limits use of the affidavit option to situations where the plaintiff had not previously taken a voluntary dismissal of an action based on the same or substantially the same acts, omissions or occurrences underlying the current action. Because plaintiff had previously taken such a voluntary dismissal, this option was not available to her.

Faced with this predicament, plaintiff argued that the "no previous dismissal" limitation set forth in section 2–622(a)(2) should be read out of the statute. In her view, the legislature never intended to adopt that portion of the law and it should not be given any legal effect. Instead, she urged reliance of the version of the statute as it existed prior to the Civil Justice Reform Amendments of 1995 (Pub. Act 89–7, eff. March 9, 1995) invalidated by this court's decision in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Under that earlier version, the affidavit option to defer compliance with the certification requirement was not limited to situations where there had been no prior voluntary dismissal. Plaintiff's complaint would therefore not have been subject to dismissal on that basis.

Arguments similar to plaintiff's have been considered and rejected by the appellate court. See *Cargill v. Czelatdko*, 353 Ill. App. 3d 654 (2004); accord *Crull v. Sriratana*, 376 Ill. App. 3d 803 (2007) (applying different provision of 2–622 but specifically endorsing *Cargill*'s result and analysis); see also *Beauchamp v. Zimmerman*, 359 Ill. App. 3d 143, 148 n.1 (2005) (following *Cargill*); *Giegoldt v. Condell Medical Center*, 328 Ill. App. 3d 907, 912 (2002) (assuming, without deciding, that the version of the statute at issue in this case, rather than the version in effect before the Civil Justice Reform Amendments of 1995, applied to render plaintiff's complaint insufficient as a matter of law).

The decision by the appellate court in this case was the first to reach a contrary conclusion.[4] While the majority agrees with that result, I do not believe it can be squared with fundamental principles of statutory construction. It is axiomatic that in interpreting a statute, the primary rule of construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). The best evidence of that intent is, of course, the language of the statute itself. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 346 (2005). When the language is unambiguous, the statute must be applied as written without resorting to other aids of construction. *People v. Bywater*, 223 Ill. 2d 477, 481 (2006).

---

[4]The majority is correct that *stare decisis* did not bar the appellate court from departing from past precedent. In reaching that conclusion, however, they fail to distinguish between vertical and horizontal *stare decisis*. The doctrine of vertical *stare decisis* requires inferior tribunals to follow the decisions of superior ones. The doctrine of horizontal *stare decisis* pertains to a court's responsibility to follow its own precedent or the precedent of coequal courts. A. Solomon, *A Simple Prescription for Texas's Ailing Court System: Stronger Stare Decisis*, 37 St. Mary's L.J. 417, 424-25 (2006). It is this latter form of *stare decisis* which is at issue here. Unlike vertical *stare decisis,* which has been viewed, historically, as an obligation, horizontal *stare decisis* has been regarded as a matter of sound policy. See W. Consovoy, *The Rehnquist Court and the End of Constitutional Stare Decisis: Casey, Dickerson and the Consequences of Pragmatic Adjudication*, 2002 Utah L. Rev. 53, 58. This approach is reflected in those decisions of our court which have held that *stare decisis* is not an inexorable command. It is, instead, a recognition of the principle that our system of justice works best when the law does not change erratically, but rather develops in a principled, intelligible fashion. See, *e.g.*, *People v. Colon*, 225 Ill. 2d 125, 145-46 (2007); *Iseberg v. Gross*, 227 Ill. 2d 78, 94-95 (2007). There is no question under Illinois law that courts may depart from their own precedent or the precedent established by a coequal court when they believe they have good cause or a compelling reason for doing so, *e.g.*, where they believe the existing decisions are unworkable or badly reasoned. *People v. Sharpe*, 216 Ill. 2d 481, 520 (2005).

In this case the legislation enacted by the General Assembly clearly and unambiguously limited the use of the affidavit option in 2–622(a)(2) of the Code (735 ILCS 5/2–622(a)(2) (West 2004)) to situations where the plaintiff "ha[d] not previously voluntarily dismissed an action based upon the same or substantially the same acts, omissions, or occurrences." This provision could not be more straightforward. We have no authority to depart from the law's plain meaning (see *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)), nor may we alter the statute's language in "a way that constitutes a change in the plain meaning of the words actually adopted by the legislature" (*U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d at 346).

The majority's opinion stands in direct conflict with these principles. It likewise violates the rule that, whenever possible, a court should construe a statute to give effect to each paragraph, sentence, clause, and word. See *People v. Maggette*, 195 Ill. 2d 336, 350 (2001). Under this rule, a court is required to construe a statute, if possible, so that no term is rendered superfluous or meaningless. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 187 (2007). Rather than give meaning to the full text of the statute at issue in this case, however, the majority holds that critical portions of it have no effect whatever.

The "no previous dismissal" limitation which is set forth in section 2–622(a)(2) and which was the predicate for the circuit court's dismissal of plaintiff's complaint was neither novel nor controversial. As the majority recounts, it was originally enacted five years before the events giving rise to this litigation as part of Civil Justice Reform Amendments of 1995 (Pub. Act 89–7, eff. March 9, 1995). Although the provision was temporarily rendered void by this court's decision in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), that action was unrelated to the merits of section 2–622(a)(2) itself. It was, instead, a byproduct of the court's determination that invalidation of the core provisions of the Civil Justice Reform Amendments of 1995 (Pub. Act 89–7, eff. March 9, 1995) rendered the remainder of that statute invalid as well. See *Best*, 179 Ill. 2d at 467.

Nothing in *Best* precluded the General Assembly from reenacting the noncore provisions of the Civil Justice Reform Amendments of

1995 (Pub. Act 89–7, eff. March 9, 1995) . To the contrary, we held there that because the remaining provisions of the statute were not challenged and were deemed invalid based solely on severability principles, the General Assembly was "free to reenact whatever provisions it deem[ed] desirable or appropriate." *Best*, 179 Ill. 2d at 471. With respect to section 2–622(a)(2), that is precisely what the General Assembly did. Less than two months after *Best* was decided, the legislature passed Public Act 90–579. That legislation restored section 2–622(a)(2) to precisely the same state it had been in before the *Best* decision, including its "no previous dismissal" limitation. The "no previous dismissal limitation" was therefore in full force and effect at the time Carla Thompson had the tonsillectomy which led to her death and Marjorie O'Casek brought this action as special administrator of Thompson's estate.

Contrary to the majority, I do not believe that inclusion of the "no previous dismissal" limitation in Public Act 90–579 can be dismissed as mere "legislative oversight." The "legislative oversight' theory presumes that the General Assembly somehow failed to realize that *Best* affected the prior version of the law. Under Illinois law, however, we must presume the opposite, namely, that in amending the statute, the General Assembly was fully aware of judicial decisions interpreting the statute and that it acted with this knowledge. *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 499 (1999).

 In the case of *Best*, this presumption is no mere legal fiction. Many of our decisions are little known by anyone besides the litigants and their lawyers. Such was not the case with *Best*. At the time it was decided, *Best* was highly publicized and vigorously debated. It was perhaps one of the most well-known decisions issued by this court in the 1990s. The reality is that no conscientious legislator in Illinois could possibly have been unfamiliar with it or its effects on the General Assembly's tort reform initiatives, of which the "no previous dismissal" limitation was a part.

The remarks of Senator Madigan and Representative Burke scarcely suffice to overcome this presumption. Although their statements regarding Public Act 90–579 deal with the addition of naprapaths to the list of health-care professionals covered by section 2–622(a)(1) of the Code (735 ILCS 5/2–622(a)(1) (West 2004)), that

may be because the addition of naprapaths was the only genuinely new aspect of the legislation. The "no previous dismissal" limitation was simply a reenactment of a provision which had previously been debated and adopted. Given that the time allotted for floor debate is limited and considering that the *Best* decision did not call into question the substantive merits of that provision, Madigan and Burke may simply have believed that elaboration on that aspect of the legislation was unnecessary.

I note, moreover, that Senator Madigan and Representative Burke are but 2 of the 177 members of the General Assembly. We have no basis for assuming that they were the only legislators familiar with the contents of Public Act 90–579, nor can we impute their personal views to the legislature as a whole. Here, as in most instances of this kind, no claim can be made that their assessment of the law was shared by the majority of their colleagues or even any of their colleagues. That is why floor debates are such an unreliable and unhelpful guide to ascertaining legislative intent and cannot, by themselves, affirmatively establish the intent of the legislature. See *People v. R.L.*, 158 Ill. 2d 432, 442 (1994). In any case, whatever Senator Madigan and Representative Burke may have had in mind when they stood on the floor of their respective chambers and addressed their colleagues about Public Act 90–579, their views cannot supercede or undo the statute that was ultimately adopted by the General Assembly. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 382 (2007). Indeed, because the language of the statute is clear and unambiguous, we should not even be referring to the floor debates or any other extrinsic aids of construction. Our obligation is to apply the law as written. *Alvarez v. Pappas*, No. 104922, slip op. at 9-10 (April 17, 2008).

Contrary to the majority, I do not believe that precedent governing implicit repeal of statutes by the General Assembly is relevant to the issue before us in this case. The challenge presented by those cases is how to reconcile legislative action taken by the General Assembly which appears to be inconsistent. That dilemma is not before us here. To the contrary, the changes to section 2–622(a)(2) of the Code which would result from applying the plain language of Public Act 90–579 are entirely consistent with the prior amendments to the statute included in the Civil Justice Reform Amendments of 1995 (Pub. Act

89–7, eff. March 9, 1995). Rather than implicit repeal, this case involves explicit reenactment of a law under circumstances we specifically sanctioned.

The fact that the "no previous dismissal" limitation was not underscored or italicized in Public Act 90–579 is of no consequence. Section 5 of the Statute on Statutes does state that

> "[i]n construing an amendatory Act printed in any volume of the session laws published after January 1, 1969, matter printed in italics shall be construed as new matter added by the amendatory Act, and matter shown crossed with a line shall be construed as matter deleted from the law by the amendatory Act." 5 ILCS 70/5 (West 2004).

As the appellate court correctly noted in *Cargill v. Czelatdko*, 353 Ill. App. 3d at 660-61, however, nothing in this provision makes the use of italics a prerequisite to the validity of new matter added by an amendment. The statute simply means that when items *are* italicized, such items shall be construed as adding new matter to the law.

The Illinois House and Senate have enacted rules which go beyond this statutory requirement by specifying that in any bill amending a statute, "[a]ll new matter shall be underscored" and "[a]ll matter that is to be omitted or superseded shall be shown crossed with a line." 95th Ill. Gen. Assem. House R. 37(e); Senate R. 5–1(e); 90th Ill. Gen. Assem. House R. 37(3); Senate R. 5–1(e). Compliance with these rules is, in the first instance, a matter for the General Assembly to judge. There is no evidence that the General Assembly found the bill which culminated in Public Act 90–579 (S.B. 120) to be problematic, and we can infer none. The Speaker of the House and the President of the Senate certified that the procedural requirements for passage of the bill had been satisfied. Under the enrolled-bill doctrine, the bill is therefore conclusively presumed to have met all procedural requirements for passage. *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 329 (2003).

Nor can we find any deficiency in Public Act 90–579 under this state's constitution. Article IV, section 8(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)) requires only that "[a] bill expressly amending a law shall set forth completely the sections amended." That requirement was met here. There is no

dispute that the complete text of the law, as amended, was printed in the bill considered and adopted by the legislature.

One may speculate as to what the General Assembly was thinking when it proceeded as it did with Public Act 90–579. It is well established, however, that we cannot ignore the plain language of a statute based on conjecture. *Petersen v. Wallach*, 198 Ill. 2d 439, 447 (2002). Under the clear terms of the statute as ultimately enacted here, plaintiff's refiled cause of action was fatally defective. The circuit court therefore acted properly when it granted defendants' motion to dismiss.

I do not see how we can countenance any other conclusion. Section 2–622(a)(2) of the Code (735 ILCS 5/2–622(a)(2) (West 2004)), as amended by Public Act 90–579, was considered by 118 members of the House and 59 members of the Senate and approved by the Governor. The majority's opinion ultimately stands on the proposition that these branches of government and their constituent officers did not realize what they were doing when they enacted Public 90–579. Pundits may assume that the other branches of government are inattentive to their duties, but we, as the highest court of this state, may not.

When we refuse to give effect to the plain language of a statute on the conjecture that its passage must have been accidental or inadvertent, we invite courts to disregard legislative enactments whose purposes they do not understand or whose wisdom they question. This is not only presumptuous, it puts courts in the position of super legislators, undermining basic principles of separation of powers.

I close by observing that the events culminating in the death of plaintiff's decedent took place in August of 2000. When plaintiff filed her complaint two years later, she failed to obtain the certificate of merit required by section 2–622 of the Code of Civil Procedure. When plaintiff attempted to refile her complaint two years after that, she *still* failed to obtain the requisite certificate.

The reason for plaintiff's ongoing difficulties in complying with the law is unknown. The delay may be justified. It may, on the other hand, simply be a function of some underlying problem with the merits of plaintiff's cause of action. In any event, without further explanation, no claim can be made that application of the law, as

written, would be in any way unfair under the particular facts of this case.

For the foregoing reasons, I respectfully dissent.

CHIEF JUSTICE THOMAS and JUSTICE GARMAN join in this dissent.